**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

NEWSDAY LLC,                                          :
                                                      :
                    *Plaintiff*,                      :
                                                      :    Case No. 2:25-cv-01297  (DG) (ARL)
         v.                                           :
                                                      :    Jury Trial Demanded
NASSAU COUNTY, NASSAU COUNTY                          :
LEGISLATURE, and BRUCE BLAKEMAN in                   :
his individual capacity,                              :
                                                      :
                    *Defendants*.                     :
                                                      :
                                                      :
_____              :

## **AMENDED COMPLAINT**

Newsday LLC, by and through its undersigned counsel, alleges as follows:

1.      This action under 42 U.S.C. § 1983 arises out of defendants' unconstitutional

retaliation against Newsday LLC ("Newsday").  As set forth below, Defendants Nassau County

(the "County"), Nassau County Legislature (the "Legislature"), and Nassau County Executive

Bruce Blakeman (in his individual capacity) (collectively, "Defendants") violated the First

Amendment by misusing governmental power to penalize Newsday for making editorial

decisions and expressing viewpoints they disfavored.

2.      Newsday is the largest news organization regularly reporting the news in Nassau

County, employing some 100 reporters to do so, and has the widest audience of any news

organization regularly covering Nassau County.  It has long been considered the "paper of

record" for Nassau County.

3.      Since early 2024, a major political story covered by Newsday has been Defendant

Blakeman's efforts to prevent transgender women and girls from competing on teams with

cisgender women and girls on Nassau County property.  Blakeman has sought to draw attention to his position for political gain.

4.      Upon information and belief, beginning in or around March 2024, Blakeman and other Defendants expressed increasing frustration that Newsday was not providing appropriate coverage of Blakeman's proposed transgender ban and expressed their displeasure with Newsday's editorial content about this topic and others.

5.      Motivated by their unhappiness with Newsday's coverage, Defendants embarked upon a "holy war" to punish Newsday by blacklisting its reporters from receiving regularly distributed press advisories, refusing to respond to inquiries from Newsday reporters, and denying Newsday reporters access to otherwise public information.

6.      When these efforts did not alter Newsday's editorial content, Defendants decided to inflict direct economic pain on Newsday through various schemes, including by removing its longstanding designation as the County's official newspaper, a designation that had provided Newsday a significant income stream by authorizing it to publish notices required by statute.

7.      To implement their scheme to remove Newsday's designation as the official Nassau County newspaper, Defendants violated both the First Amendment and various state laws.  On June 24, 2024, the Legislature adopted a local law purporting to amend the Nassau County Charter (the "County Charter") to grant the county executive for the first time authority over the process by which an official newspaper is selected.

8.      The County Charter had long vested this authority to designate an official Nassau County newspaper exclusively in the Legislature.  Because the purported amendment would transfer and curtail the power of the members of the Legislature, the Municipal Home Rule Law required voters to approve the amendment at a referendum before it could take legal force or

effect. Defendants, however, failed to submit the local law containing the proposed amendment to the voters during the 2024 election and, accordingly, it was never enacted and has no valid force or effect.

9.      Acting pursuant to the new power purportedly delegated to him by the invalid law, in December 2024 Blakeman recommended that the New York Post replace Newsday as the County's official newspaper. Then, also acting pursuant to the invalid law, the Legislature brought Blakeman's recommendation to a vote at a public meeting on December 16, 2024, with no prior notice that the issue was on the agenda and no advance distribution of the proposed resolution, as required by the Open Meetings Law.

10.     Defendants' motivation and conduct are flatly illegal. Defendants used government power to punish and retaliate against a news organization for its editorial decisions, content, and viewpoint in direct contravention of the First Amendment and state law.

## PARTIES

11.     Plaintiff Newsday LLC is a Delaware limited liability company, with a principal place of business at 6 Corporate Center Drive, Melville, New York 11747. Newsday is the only Long Island-based daily print newspaper, and it is also published online.

12.     Defendant Nassau County is a municipal corporation located on Long Island in the State of New York.

13.     Defendant Nassau County Legislature is the local government body responsible for making laws and policies that impact the County. The Legislature is made up of 19 legislators, one from each of the County's districts.

14.     Defendant Bruce Blakeman is the Nassau County Executive. He assumed office in 2022 and is a member of the Republican Party. He is sued in his individual capacity.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the First and Fourteenth Amendments to the United States Constitution, and under 42 U.S.C. § 1983. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

16.     This Court has supplemental jurisdiction over claims arising under New York state law pursuant to 28 U.S.C. § 1367(a).

17.     This Court has personal jurisdiction over all Defendants because they reside or are located within this District.

18.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Defendants reside in the Eastern District of New York and/or the Eastern District of New York is the district in which a substantial part of the events or omissions giving rise to Newsday's claims occurred.

## FACTUAL ALLEGATIONS

A.     **Newsday Is the Preeminent Source for Nassau County News**

19.     Since its founding in 1940 in Nassau County, Newsday has dominated Long Island news. Its reporters and editors have dedicated themselves to informing the public about matters of public concern in Long Island, earning Pulitzer Prizes for their Long Island coverage along the way.

20.     Politicians have long acknowledged Newsday's status as Long Island's newspaper of record. In 2008, then-State Senator Dean G. Skelos, a Republican from Long

Island, stated that "[t]here's no question that Newsday dominates," said "[t]o get a story out, you need to get it in Newsday."[1]

21.     Newsday currently has a staff of nearly 100 reporters dedicated to covering Nassau County.  Its coverage is robust and unrivaled, with its reporters regularly chronicling every aspect of life in Nassau County, including but not limited to local government, politics, crime, cultural events, business, real estate, education, and professional and high school sports.

22.     No other news organization matches Newsday's coverage in Nassau County.  In 2024, Newsday published 1,615 articles that mentioned Nassau County, compared with just 155 articles published by the New York Post.  Those numbers were 1,690 and 117, respectively, for 2023.  Along similar lines, Newsday published 291 articles mentioning Blakeman in 2024, compared with the New York Post's 29.

23.     Print circulation data underscore that County residents appreciate—and pay for—Newsday's consistent and award-winning coverage.  Newsday's Sunday print circulation in Nassau County was 42,185 in the six months ended March 31, 2025, dominating the 6,634 for the New York Post in the same period.  Newsday's daily print circulation in Nassau County was 33,295 in the same period, compared with 6,037 for the New York Post.

24.     Total readership data further underscore that Nassau County residents overwhelmingly rely on Newsday's coverage.  Newsday's weekly total print and digital readership for Nassau County was 460,772 between August 2024 and February 2025, more than doubling the New York Post's 188,347.

---

[1] Richard Perez-Pena, *After Years of Turmoil, Newsday Prepares for Another Owner*, N.Y. Times (May 26, 2008), https://www.nytimes.com/2008/05/26/business/media/26newsday.html.

5

**B.    Newsday Has a Decades-Long Commercial Relationship with the County as its Official Newspaper**

25.    As a matter of state law and pursuant to the County Charter, the Legislature each year must select newspapers to be the County's "official newspapers."[2] Official newspapers are the legally designated fora for the placement of various governmental notices that must be published by law, and only official newspapers are qualified to receive advertising revenues to publish those notices. These notices must be published in print editions.[3]

26.    As an example of a governmental notice, before the Legislature can pass a local law, the County Charter requires it to publish a notice in an official newspaper specifying the title of that local law and the time and place of the public hearing on it.[4]

27.    The purpose of designating official newspapers—and requiring the publication of notices regarding certain governmental actions in those newspapers—is to increase government transparency by reaching as many members of the public as possible.

28.    Given this purpose, the Legislature repeatedly recognized Newsday as the most appropriate forum for the County's notices, as it is the only newspaper with significant reach that focuses on the County.

29.    The County Charter has long given the Legislature the exclusive power to designate the County's official newspapers through a process set forth in Section 2211(b) of the County Charter. Before Defendants' ineffective attempt to amend this provision in June 2024, and at all relevant times, Section 2211(b) required members of the Legislature representing "the

---

[2] N.Y. County Law § 214; County Charter § 2211. This Amended Complaint cites to the County Charter dated January 1, 2024. *See Laws, Regulations & Codes*, Nassau County, https://www.nassaucountyny.gov/581/Laws-Regulations-Codes (last accessed May 29, 2025). Relevant excerpts of the Charter are attached as Exhibit 1.
[3] *See* N.Y. Gen. Constr. Law § 60(a).
[4] *See* County Charter § 152(4), Ex. 1 at N3.

two political parties whose candidate for governor received the highest and next highest number of votes in the county at the last general election at which a governor was chosen" each to "designate in writing a newspaper published daily . . . to be an official newspaper of the county" by January 15 each year.[5] Under this provision of the County Charter, the designation of an official newspaper is vested solely and independently in those members of the Legislature representing the two political parties that achieved the greatest electoral success; the county executive has no role to play.

30.     Upon information and belief, pursuant to their responsibilities under the County Charter, both Republican and Democratic members of the Legislature for many decades had each designated Newsday as the official newspaper.[6]

31.     Blakeman was aware of Newsday's longstanding commercial relationship with the County. On or about December 16, 2024, he acknowledged that "Newsday has been the official paper for as far back as we can remember."[7]

32.     As a result of the official newspaper designation, the County has paid Newsday hundreds of thousands of taxpayer dollars over the years to publish such notices. The County spent approximately $200,000 to publish such notices in Newsday in both 2023 and 2024.

33.     Notices published in Newsday appear in print and on Newsday's website, where they are accessible via a footer on newsday.com and in the online Classified section front.

---

[5] Ex. 1 at N5.

[6] For example, although the Charter permits two official newspapers, one chosen by the legislators from each party, both the Republicans and Democrats of the Legislature separately designated Newsday as the official newspaper on January 8, 2024. *See* Ex. 2.

[7] Post Staff Report & Reuven Fenton, *New York Post to focus on Long Island sports, neighborhood news in 2025,* N.Y. Post (Dec. 16, 2024) ("Fenton Article"), https://nypost.com/2024/12/16/us-news/new-york-post-to-expand-long-island-coverage-in-2025/.

Anyone, not just paid subscribers, can access the notices on Newsday's website by navigating to the Menu side bar and selecting public notices or navigating to the footer.

### C.    Blakeman Wages A 'Holy War' Against Newsday For Its Coverage

34.    Upon information and belief, since early 2024, Blakeman and his aides, including his communications director and spokesperson Christopher Boyle, have retaliated against Newsday because they disapprove of Newsday's reporting, editorial opinions, and its decisions about what news to cover.

35.    Newsday has extensively covered Blakeman's efforts to prevent transgender women and girls from participating on sports teams with cisgender women and girls at County facilities, from his issuance of an Executive Order in February 2024 to that effect,[8] to a State Supreme Court's decision that Blakeman exceeded his authority in issuing the Executive Order,[9] to the County Legislature's passage of a similar law in June,[10] to criticism about the ban.[11]

36.    Newsday's editorial board has also written extensively—and critically—about Blakeman's efforts on this front.[12]

---

[8] *See* Vera Chinese, *Bruce Blakeman issues transgender restrictions at Nassau athletic facilities*, Newsday (Feb. 22, 2024), https://www.newsday.com/long-island/politics/bruce-blakeman-transgender-bm7oag28.

[9] *See* Scott Eidler, *Court: Bruce Blakeman lacked authority to issue ban of transgender athletes from county facilities*, Newsday (May 11, 2024), https://www.newsday.com/long-island/politics/transgender-ban-nassau-blakeman-ygbuaxqf.

[10] *See* Scott Eidler, *Nassau County lawmakers approve transgender female athlete ban*, Newsday (June 25, 2024), https://www.newsday.com/long-island/politics/transgender-nassau-county-athletes-lb2o1zkk.

[11] *See* Scott Eidler, *'Impossible to enforce': The logistical hurdles facing the Nassau County transgender athlete ban*, Newsday (July 14, 2024), https://www.newsday.com/long-island/politics/nassau-transgender-ban-ypquliik.

[12] *See e.g.*, The Editorial Board, *Blakeman should just do his job*, Newsday (Feb. 23, 2024), https://www.newsday.com/opinion/editorials/bruce-blakeman-transgender-athletes-lgbtq-ijy7ye2r; The Editorial Board, *Nassau County transgender athlete bill is a loser*, Newsday (June 27, 2024), https://www.newsday.com/opinion/editorials/blakeman-transgender-sports-ban-nassau-ijy7ye2r.

37.     On information and belief, Blakeman has been dissatisfied with Newsday's coverage and, in particular, with Newsday's failure to publish an article *in print* when Caitlyn Jenner visited Nassau County to support Blakeman's Executive Order. Newsday published an article on its website about Jenner's appearance.[13]

38.     Upon information and belief, the Blakeman administration engaged in a multi-pronged effort to deprive Newsday of access to public information because of its displeasure with Newsday's coverage. Since March 2024, Blakeman, Boyle, and the Blakeman administration have ignored dozens of Newsday requests for comment or information. The coordinated blackout has impeded Newsday's reporting by increasing the time and effort required to report on matters of great public interest to Nassau County residents.

39.     For example, in May 2024, Boyle failed to respond to numerous requests for comment about the online processing fee that the County charges for the online payment of traffic tickets—even where his counterpoint in neighboring Suffolk County managed to do so.[14]

40.     On or about June 3, 2024, instead of answering a request for comment, Boyle asked if Newsday planned to publish "positive" editorials about cricket, public safety, or economic development.

41.     On or about June 27, 2024, tired of his requests going unanswered, Newsday criminal justice reporter Michael O'Keeffe texted Boyle and asked: "So what do I need to do to get you to respond to my calls?"[15]

---

[13] *See* Maureen Mullarkey, *Caitlyn Jenner supports Nassau's transgender restrictions; LGBTQ advocates fire back*¸ Newsday (Mar. 19, 2024), https://www.newsday.com/long-island/politics/trans-sports-jenner-olympics-blakeman-transgender-ch21d27o.

[14] *See* Lorena Mongelli, *Long Island villages charging 7% credit card fees for online ticket payments*, Newsday (May 11, 2024), https://www.newsday.com/long-island/transportation/tickets-credit-card-fees-junk-wfctdvy1.

[15] Ex. 3.

42.     Boyle acknowledged that the lack of comment was not accidental and was instead a deliberate strategy to punish Newsday for its coverage: "Nothing against you, we are just in a little bit of a holy war against newsday [sic] at the moment[.]"[16]

43.     Boyle elaborated that the "holy war" is about "[a] myriad of things," noting that "[w]e haven't been commenting on anything . . . [a]s difficult as that makes my job."[17]

44.     In July 2024, Blakeman would not respond to messages seeking comment about a controversial casino project in the County, even though he is a major proponent of the project.[18]

45.     In August 2024, the County's Health Department failed to respond to a request for comment about updated COVID vaccines, even when a spokesperson for the neighboring Suffolk County Health Department responded in the same timeframe.[19]

46.     In April 2025, Boyle would not respond to multiple requests for comment about a former resident's longstanding case against the Nassau County police.[20]

47.     Boyle touted his power to withhold comments and information from Newsday staff members in an effort to sway coverage of the Blakeman administration.   On or about August 7, 2024, Boyle sent Randi Marshall, a member of Newsday's editorial board and a columnist, a link to her colleague's social media post that criticized Blakeman.  Boyle asked: "Do you think things like this make us more or less likely to talk to the [editorial] board?"  He

---

[16] *Id.*

[17] *Id.*

[18] *See* Candice Ferrette, *Nassau County advances Las Vegas Sands bid to operate Coliseum for years*, Newsday (July 19, 2024), https://www.newsday.com/long-island/nassau/nassau-coliseum-sands-casino-wqvoe5vv.

[19] Brianne Ledda, *Latest COVID-19 vaccines now available on Long Island*, Newsday (Aug. 28, 2024), https://www.newsday.com/news/health/covid-new-yz8o695i.

[20] Janon Fisher, *Ex-Franklin Square resident wins $500G award against Nassau police for wrongful arrest*, Newsday (Apr. 10, 2025), https://www.newsday.com/long-island/nassau/federal-jury-award-carl-semencic-floral-park-o5wf57en.

continued: "This is me communicating with you, voicing my concerns. And giving you insight into how things are perceived."

48.    Upon information and belief, the Blakeman administration also removed all but one Newsday employee—an editor—from its distribution list for press releases starting in March 2024. Where previously there had been at least 20 Newsday reporters and editors on the distribution list, the only one kept on the list was also a registered Republican. As a result of this blackout, Newsday was routinely denied public information that Blakeman and the County provided to other news outlets, including advisories for press conferences and public statements.

49.    In recent months, thanks to the efforts of one reporter, a general Newsday newsroom email address has been added to the distribution list, but journalists who cover Nassau County daily have had their repeated requests to be added to the email distribution list ignored by the Blakeman administration.

50.    Upon information and belief, Blakeman has sought to exact financial punishment on Newsday as part of his retaliatory campaign. On or about June 24, 2024, Joe Kenny from the Ed Moore Advertising Agency abruptly cancelled several scheduled advertisements for Nassau Parks, which are owned by the County. In explaining the cancellation, he stated that "Newsday is relentlessly on Bruce Blakeman and anything Nassau County does" and pointed to a recent Newsday editorial about Blakeman. Nassau Parks never resumed advertising in Newsday that year, resulting in a year-over-year revenue loss of approximately $60,000 in 2024.

51.    After Newsday filed its Complaint on March 6, 2025, Nassau Parks resumed some advertising in 2025, without explanation.

52.    Blakeman's efforts to oust Newsday from its longstanding status as the County's official newspaper is part and parcel of his "holy war" against Newsday.

**D.    Blakeman's Scheme to Wrest Control of the Official Newspaper Designation Process from the Legislature**

53.    At a meeting of the Legislature on or about June 24, 2024, a representative of Blakeman's administration introduced a proposal to limit the Legislature's exclusive power to choose official newspapers independently and give a controlling role in the designation process to Blakeman and future county executives.

54.    Specifically, Chris Leimone, Blakeman's Director of Legislative Affairs, introduced a proposed local law to amend Section 2211 of the County Charter. The proposed law would give the county executive new authority to recommend the designation of the official county newspaper, "subject to the approval of the County Legislature," and also authority to recommend "subject to legislative approval," the designation of "one or more online news media websites as a newspaper[] for publication purposes."[21]

55.    Speaking on behalf of the Democratic caucus, Legislator Arnold Drucker objected that the proposed law "represents a curtailment of the Legislature."[22] As he explained, under County Law, Section 214 "this particular aspect of governance is the sole power of the County Legislature," and inserting the county executive into the process is "a violation, it's a contravention of county law."[23]

56.    After limited discussion, the proposed local law amending Section 2211 of the County Charter passed by a party line vote, with 12 Republican legislators voting for it and 5

---

[21] Tr., *Nassau County Full Legislature Meeting* (June 24, 2024) (relevant excerpts are attached as Exhibit 4) at 243-44.
[22] Ex. 4 at 244-45.
[23] *Id*. Tellingly, earlier at the same meeting, a legislator criticized Newsday's coverage during a discussion of Blakeman's bill targeting transgender girls and women. Specifically, Republican Legislator John Ferretti, Jr. accused another legislator of "trying to tell Newsday it's a transgender ban. They'll probably print it, but it's not reality, correct?" *Id*. at 113.

Democrats voting against it. The proposed local law amending Section 2211 of the County Charter was designated Local Law 4-2024.

57.     Local Law 4-2024 states, in relevant part:

The County Executive shall on or before January sixth in each year recommend, subject to approval by the County Legislature, a newspaper published daily to be an official newspaper of the county for the ensuing year or until its successor is designated. Thereafter, the County Legislature shall on or before January fifteenth in each year designate in writing a newspaper published daily to be an official newspaper of the county for the ensuing year or until its successor is designated, and such designation shall be filed with the clerk of the County Legislature. All notices, other than notices relating to the sale of property for taxes which shall be published as now or hereafter provided by law, required to be published by this act or otherwise by law, shall be published in the official newspaper designated as provided above and in such other publications as the County Executive may, from time to time, determine unless otherwise provided by the local finance law.[24]

58.     Local Law 4-2024 purported to insert the county executive into the official newspaper designation process and strip the Legislature's minority party—the political party "whose candidate for governor received the . . . [second-]highest number of votes in the county at the last general election at which a governor was chosen"—of its authority to designate an official newspaper.[25]

---

[24] *See Local Law 4-24*, Nassau County, https://www.nassaucountyny.gov/DocumentCenter/View/47730/LOCAL-LAW-4-24?bidId (Ex. 5) at N8-N9.
[25] Ex. 1 at N5.

59.     A local law that abolishes, transfers, or curtails any power of any elective officer is subject to a mandatory referendum.[26]

60.     The Legislature did not submit Local Law 4-2024 to voters in a referendum after its party-line adoption in June 2024 and it therefore never validly amended the County Charter.

**E.     The Legislature's Surprise Adoption of a Resolution Stripping Newsday of its Official Newspaper Status**

61.     Acting pursuant to Local Law 4-2024, on December 9, 2024, Blakeman sent a letter to Howard J. Kopel, presiding officer of the Legislature, and Delia DeRiggi-Whitton, minority leader of the Legislature, recommending that the Legislature designate the New York Post as the official newspaper of the County.

62.     On December 16, 2024, the Legislature held a regularly scheduled meeting. On information and belief, after receiving Blakeman's recommendation the Legislature's leaders intended to discuss and bring to a vote at that meeting a proposed resolution to designate the New York Post as the County's official newspaper.

63.     The agenda for the Legislature's December 16, 2024 meeting included no information about a proposed resolution to designate an official newspaper and no text of the proposed resolution was made public in advance of the meeting. Upon information and belief, this information was intentionally withheld to evade public scrutiny.

64.     The only available recording of the December 16, 2024 meeting of the Legislature released by the County cuts out at the start of, and during, the Legislature's discussion about the official newspaper designation, so it was not immediately clear what transpired at the meeting.[27]

---

[26] N.Y. Mun. Home Rule Law § 23(2)(f); Ex. 1 at N4.

[27] *See December 16, 2024 - Nassau County Full Legislature Meeting,* https://vimeo.com/showcase/11350648?video=996310846 at 3:24:08 – 3:24:40. The Legislature later published a transcript of the meeting. *See* Tr., *Nassau County Full Legislature Meeting* (Dec. 16, 2024) (Relevant excerpts of the transcript of the December 16, 2024 Legislature

65.     During debate on the proposal to remove Newsday as the official county newspaper, Democratic Legislator Scott Davis criticized the proposed change. He stated: "So in terms of the designation of an official County newspaper, the common sense seems to me that the newspaper that we should be using is the one that reaches the most people. The idea of good government is that we are transparent, what we do is scrutinized, and we are accountable for what we do. It's my understanding that Newsday has been the official newspaper of the legislature of the county since the inception of the legislature. . . ."[28] Citing data showing that Newsday has a dramatically higher weekly readership than the New York Post, he added: "I'm trying to figure out . . . why we're doing this . . . So why the change? Why now? Why go to an official newspaper that has less readership?"[29] He concluded: "[W]hen we're making decisions that are blatantly political and they have an adverse impact on the scrutiny that the public can place on us, it's just bad government and we shouldn't do this."[30]

66.     Republican Legislator Howard Kopel specifically cited Newsday's editorial viewpoint in its coverage of the County as grounds for removing official county notices from it. "Newsday has exhibited consistent bias in terms of its editorial content and . . . an inability to distinguish between reporting news and their editorial opinions, which seep into the news."[31] He also incorrectly asserted that Newsday's paywall blocked non-subscribers from viewing the County's notices. Ignoring Newsday's track record of robust and consistent coverage of events in the County, and its nearly 100 reporters covering Nassau County, he touted the New York Post's promise to dedicate two full-time reporters to Nassau County at some future time.

---

meeting are attached as Exhibit 6).
[28] Ex. 6 at 100.
[29] *Id*. at 101.
[30] *Id*. at 103.
[31] *Id*. at 103-04.

67.    Then-Democratic Legislator Siela A. Bynoe criticized the proposed change and emphasized Newsday's ability to promote public awareness of government, given its subscriber base. "[T]o say that we're not going to support Newsday because we don't agree with how they have dealt with us. I think is shortsighted. It's inappropriate, and it has no place in government or in this chamber."[32]

68.    The resolution designating the New York Post as the County's official newspaper passed along party lines, with the 12 Republicans voting for it and the 7 Democrats voting against it.

**F.    Blakeman Confirms His Motivation in Celebrating the Purported Removal of Newsday's Designation**

69.    Blakeman has celebrated the removal of Newsday's designation and openly admitted that Newsday's coverage of the County prompted him to take action to replace Newsday with the New York Post.

70.    On December 16, 2024, Blakeman called into the Cats & Cosby radio show on WABC to publicize the change in official newspaper.[33] "Today, at my recommendation, the Nassau County Legislature designated the New York Post as the official newspaper of Nassau County," he said.[34] He emphasized, on air, that Newsday's editorial content was one of the reasons for the switch. Blakeman said: "Many of our constituents don't agree with the philosophy of the editorial board of Newsday, which was also an important consideration. And the fact that Newsday's reporting has been very, very spotty when it comes to issues concerning

---

[32] *Id.* at 107.
[33] *See Bruce Blakeman & Erin Geismar: Nassau County welcomes New York Post as county's official newspaper*, WABC (Dec. 16, 2024), https://wabcradio.com/episode/bruce-blakeman-erin-geismar-nassau-county-welcomes-new-york-post-as-countys-official-newspaper-12-16-24-2/.
[34] *Id.* at 1:12-1:23.

Nassau County . . . It was something that you know, was in the works, and we felt that we needed a clean fresh start to get our message out and we're looking forward to a good relationship with The New York Post. . . ."[35]

71.     On or about December 16, 2024, at a news conference announcing the New York Post as the official newspaper, Blakeman said: "Newsday has not been as responsive as we would have liked them to be."[36] He added: "They are very selective in their coverage. They tend to cover only one side of the story and I think this has gone on for far too long."[37]

72.     Blakeman has failed to explain why pivoting away from Newsday would enable the County to reach a wider audience through its notices. He cannot do so, because no newspaper has Newsday's reach within Nassau County, presumably the desired audience for County notices.

73.     At the December 16, 2024 news conference, Blakeman said: "And many people would say, 'Well, Bruce, why? Why are you guys doing this when Newsday has been the official paper for as far back as we can remember?' Well, first of all, I think the New York Post, their coverage is much more vast, and I think that we try to take a regional approach and a lot of the issues that we have, and certainly the New York Post is well read by many people throughout the metropolitan area and nationally and internationally as well."[38] But national and international readers are assuredly not interested in reading the County's notices.

---

[35] *Id.* at 1:49-2:25

[36] Casey Fahrer, *Nassau County changes official newspaper from Newsday to New York Post*, Long Island Press (Dec. 17, 2024), https://web.archive.org/web/20241217184527/https://www.longislandpress.com/2024/12/17/nassau-new-york-post/.

[37] *Id.*

[38] Fenton Article, *supra.*

74.     On December 23, 2024, Blakeman publicized the switch on the social media platform Instagram. He said that the New York Post had "commit[ed] to a daily page in the physical paper and a separate section on their website to share Nassau local stories" and that "the Post plans to deliver a much better rate structure with legal ads than what we currently pay with Newsday."[39] He failed to mention that Newsday publishes an entire newspaper every day that commits pages upon pages to coverage of news in the County.

75.     While Blakeman celebrated his effort to oust Newsday as the official newspaper, Newsday's readers decried the move as political and one that would hinder government transparency and accountability.[40]

76.     In 2025, without the official newspaper designation, the County's spending on legal notices in Newsday has plummeted to a fraction of the historical billing, to less than $20,000 through May 11, 2025.

**G.     Newsday Serves Notice of State Law Violations**

77.     On January 28, 2025, pursuant to New York County Law § 52 and New York General Municipal Law § 50-e, Newsday served Nassau County Attorney Thomas A. Adams with a notice of claim for Defendants' violation of the Municipal Home Rule Law and the Open Meetings Law. Mr. Adams acknowledged receipt of the notice of claim the same day by sending a document preservation notice.

78.     By letter dated February 25, 2025, attorneys acting on behalf of Blakeman, in his official capacity, demanded that Newsday appear for examination about its state law claims,

---

[39] bruceblakeman, Instagram (Dec. 23, 2024), https://www.instagram.com/bruceblakeman/p/DD702tevHS8/.
[40] *See* Newsday Readers, *Nassau County's move irks readers*, Newsday (Dec. 22, 2024), https://www.newsday.com/opinion/letters/bruce-blakeman-nassau-county-legislature-new-york-post-ji10m9i5.

pursuant to General Municipal Law § 50-h. Blakeman set the examination for May 21, 2025, one of the last possible days permitted by law. *See* N.Y. Gen. Mun. Law § 50-h(5) (permitting claimant to commence action if no examination of the claim has "concluded within ninety days of service of the demand").

79.    On May 21, 2025, a representative for Newsday appeared for examination about Newsday's state law claims, pursuant to General Municipal Law § 50-h. Newsday has duly complied with the demand for examination.

80.    More than thirty days have elapsed since the service of the notice of claim for Newsday's state law claims and adjustment and payment of the claims has been neglected or refused.

## CLAIMS FOR RELIEF
### COUNT ONE:
### (Violation of Newsday's First Amendment Rights – against the County, the Legislature, and Blakeman in his individual capacity)

81.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

82.    Defendants are "persons" for the purposes of 42 U.S.C. § 1983.

83.    The Fourteenth Amendment to the United States Constitution incorporates the protections of the First Amendment as applied to and binding on the State of New York.

84.    Defendants are state actors operating under color of state law.

85.    Defendants' conduct set forth above, including the revocation of Newsday's official newspaper designation, constitutes impermissible viewpoint discrimination and other unconstitutional acts taken in retaliation for Newsday's exercise of rights protected by the First Amendment.

86.     Defendants' retaliation has been intentional, fueled by a desire to punish Newsday for its exercise of its First Amendment-protected speech rights. Newsday's speech was a substantial or motivating factor in Defendants' retaliation.

87.     Defendants' conduct violates 42 U.S.C. § 1983.

## COUNT TWO:
**(Violation of Municipal Home Rule Law § 23(2)(f) – against the Legislature)**

88.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

89.     Local Law 4-2024 purported to amend Section 2211 of the County Charter by diminishing the Legislature's power to choose an official newspaper independently and inserting the county executive into the designation process. Local Law 4-2024 also purported to eliminate the power of the Legislature's minority party to separately designate an official newspaper. This local law sought to transfer and curtail the power of elective officers—members of the Legislature.

90.     Any local law that abolishes, transfers, or curtails any power of an elective officer is subject to a mandatory referendum. *See* N.Y. Mun. Home Rule Law § 23(2)(f); County Charter § 155.

91.     The Legislature passed Local Law 4-2024 and deemed it operative or effective without conducting the mandatory referendum.

92.     Because Local Law 4-2024 would transfer and curtail the power of elected members of the Legislature, it has no legal force or effect unless and until it is presented to and approved by voters in a referendum.

93.     The Legislature's subsequent conduct purporting to act pursuant to authority provided by Local Law 4-2024 violates Municipal Home Rule Law § 23(2)(f) and County Charter § 155 and has no legal force or effect.

## COUNT THREE:
### (Violation of the Open Meetings Law – against the Legislature)

94.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

95.     The Legislature is a "[p]ublic body" for the purposes of N.Y. Public Officers Law §§ 102(2), 103.

96.     The Legislature's December 16, 2024 meeting was an "open meeting" for the purposes of N.Y. Public Officers Law § 103(e).

97.     Any proposed resolution set to be discussed at an open meeting of a public body "shall be made available, upon request therefor, to the extent practicable at least twenty-four hours prior to the meeting" and "such records shall be posted on the website [of the agency that houses the public body] to the extent practicable at least twenty-four hours prior to the meeting." N.Y. Pub. Off. Law § 103(e).

98.     Upon information and belief, the Legislature intentionally kept the proposed resolution to strip Newsday of its status as the County's official newspaper off of the meeting's agenda and chose not to post the text of its proposed resolution on its website ahead of its meeting on December 16, 2024. Upon information and belief, the Legislature made these decisions to avoid public scrutiny of the proposed resolution.

99.     As a result, Newsday had no advance notice that the Legislature was set to debate Newsday's official newspaper designation.

100.     At the December 16, 2024 meeting, the Legislature passed the proposed resolution and made the New York Post the official newspaper instead of Newsday.

101.     The Legislature's conduct violates N.Y. Pub. Off. Law § 103(e) and should be deemed to have no legal force or effect.

## PRAYER FOR RELIEF

**WHEREFORE**, in light of the foregoing, Newsday respectfully requests this Court to:

A.      Issue a permanent injunction ordering Defendants to reinstate Newsday as the official newspaper and ordering the County and the Legislature to award future designations to newspapers only upon the basis of articulable criteria that are both content- and viewpoint-neutral;

B.      Declare that Local Law 4-2024 lacks legal force or effect because it purports to transfer and curtail the power of elected members of the Legislature but has not been submitted to and approved by the voters at a referendum;

C.      Declare that the Legislature violated the Open Meetings Act by failing to post the text of the proposed resolution to strip Newsday of its official newspaper designation in advance of its meeting;

D.      Declare that the resolution passed in December 2024 designating the New York Post the official newspaper for the County to be null and void because it was passed pursuant to the purported authority of a local law that lacked legal force or effect;

E.      Award Newsday compensatory damages for all revenue lost as a result of its de-designation as the County's official newspaper and as a result of Defendants' unconstitutional retaliatory campaign, in an amount to be proven at trial;

F.      Award Newsday's costs of suit and reasonable attorneys' fees and other expenses under 42 U.S.C. § 1988; and

G.      Grant such other and further relief as the interests of justice may require.

## JURY DEMAND

Newsday hereby demands a jury trial.

Respectfully submitted,

Dated: May 30, 2025

*/s/ Lynn B. Oberlander*
Lynn B. Oberlander
David A. Schulz
Saumya K. Vaishampayan
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, NY 10019-5820
Telephone: 212.223.0200
Facsimile: 212.223.1942
oberlanderl@ballardspahr.com
schulzd@ballardspahr.com
vaishampayans@ballardspahr.com
*Attorneys for Plaintiff Newsday LLC*