**WILLKIE FARR & GALLAGHER** LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

July 30, 2025

**VIA ECF**

Honorable Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, NY 11201

Re: *Newsday LLC v. Nassau County, Nassau County Legislature, and Bruce Blakeman, in his individual capacity*, Case No. 2:25-cv-01297-DG-ARL

Your Honor:

We write in response to Plaintiff's letter of July 18, 2025, in which Plaintiff seeks this Court's leave to further amend its amended complaint. Plaintiff has already amended its complaint once, and can no longer amend as a matter of right. Because Plaintiff lacks Article III standing and is not within the zone of interests protected by the laws Plaintiff cites, amendment would be futile and leave should be denied. Importantly, Plaintiff nowhere argues that amendment *would not* be futile. Instead, Plaintiff contends that amendment will not prejudice Defendants while at the same time it seeks to bolster its complaint with meritless claims that will nevertheless remain live during the court-ordered mediation, that will impose additional legal costs on Defendants, and that will consume valuable pages at the motion-to-dismiss stage. Defendants request the court deny the motion to amend.

Here, amendment would be futile because Plaintiff's procedural objection to Local Law 4-2024 faces two fundamental justiciability problems, neither of which is solved by its proposed amendment. *First*, Plaintiff's claimed injury is that it was allegedly improperly denied official-newspaper status for 2025—but reverting to the previous version of the County Charter would not redress that problem, because Plaintiff has alleged that its newspaper lacks the required circulation to be designated the official newspaper under the previous version of the law. And, *second*, the underlying purpose of the referendum provisions Plaintiff cites is to protect the *electorate*'s rights, and Plaintiff is not a member of any electorate, much less Nassau County's. Accordingly, Plaintiff is not within the zone of interests of any of the referendum provisions Plaintiff cites—and so it lacks a cause of action to bring either its original Count II or its amended Counts II and III.

**RELEVANT BACKGROUND**

Before June 2024, Section 2211 of the Nassau County Charter outlined the procedure for designating the county's official newspaper as follows:

> The member or members of the Board of Supervisors representing, respectively, the two political parties whose candidate for governor received the highest and next highest number of votes in the county at the last general election at which a governor was chosen, or a majority of such members representing, respectively, each of such

> political parties, shall on or before January fifteenth in each year designate in writing a newspaper published daily and *having an average daily paid general circulation of not less than fifty thousand within the county*, to be an official newspaper of the county for the ensuing year or until its successor is designated ….

R.1-3 at 6 (emphasis added). On June 24, 2024, the Legislature passed Local Law 4-2024, which amended Section 2211, in relevant part, to read as follows:

> The County Executive shall on or before January sixth in each year recommend, subject to approval by the County Legislature, a newspaper published daily to be an official newspaper of the county for the ensuing year or until its successor is designated. Thereafter, the County Legislature shall on or before January fifteenth in each year designate in writing a newspaper published daily to be an official newspaper of the county for the ensuing year or until its successor is designated ….

R.1-7 at 9. Plaintiff alleges that its newspaper, *Newsday*, has a "daily print circulation in Nassau County [of] 33,295." R.22 ¶ 23. Plaintiff alleges that it is a Delaware corporation with its principal place of business in Melville, New York. R.22 ¶ 11. Neither the State of Delaware nor Melville lies within Nassau County. *See Hoyt v. Russell*, 117 U.S. 401, 404 (1886) ("a court will take notice of the boundaries of the state or territory where it holds its sessions").

On December 16, 2024, the Nassau County Legislature, acting under Section 2211, chose the *New York Post* as the County's official newspaper for 2025. In January 2025, Plaintiff served the Defendant Legislature with a Notice of Claim asserting a violation of New York Home Rule Law § 23, contending that because Local Law 4-2024 "would diminish the Legislature's power to chose an official newspaper independently and insert the county executive into the designation process," it was subject to a mandatory referendum. Although it alleged no new facts, Plaintiff altered that legal theory before inserting it into its amended complaint. Then, after pre-motion letter briefing that alerted Plaintiff to the fact that it had cited the wrong law, Plaintiff now seeks to further alter the legal theory underlying its existing claim *and* to add a second claim to assert purported violations of § 34 of the Home Rule Law, and of the referendum provisions of the New York Constitution and the Nassau County Charter. *See* R.30-1 ¶¶ 88–99.

## ARGUMENT

Leave to amend a pleading lies within the sound discretion of this Court. *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009). Although the Court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), it may deny leave for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009). Amendment is futile when "the proposed claim could not withstand a motion to dismiss." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Leave to amend should be denied, for example, where the plaintiff's proposed amendment fails to demonstrate that it has Article III standing to bring the proposed claim. *Treiber v. Aspen Dental Mgmt., Inc.*, 635 F. App'x 1, 4 (2d Cir. 2016) (summary order) (affirming denial of leave to amend where plaintiff "failed to show how amendment would have demonstrated a cognizable injury sufficient to support Article III standing").

Plaintiff's proposed amendment is futile for two reasons, both of which render both its original Home Rule Law claim and its amended claims nonjusticiable. First, it lacks Article III standing because the purported injury in its complaint—to the extent it constitutes injury at all—is not redressable by a favorable decision on its referendum-law claims. And, second, as a non-voter, it is not within the zone

of interests protected by any of the referendum laws it cites.

Having been given the opportunity to address its justiciability problems, Plaintiff instead merely asks the Court to defer ruling on amendment until the 12(b)(6) stage. But this Court need not waste its own resources—or those of the Defendants—in allowing Plaintiff to plead *two* plainly nonjusticiable claims just because its current amended complaint already contains *one* such claim. Leave to amend should be denied.

**Plaintiff lacks standing because its purported injury is not redressable by a favorable decision of this Court.** The central injury of which Plaintiff complains is that "Newsday was injured when the Nassau County Legislature purported to remove it as Nassau County's official newspaper" and that its profits suffered as a result.[1] Notice of Claim ¶ 4. Plaintiff seeks to alter that outcome by means of a procedural challenge to Local Law 4-2024, the law by which the Legislature amended the County Charter to change the official-newspaper-designation process. But reverting the Charter to the version Plaintiff contends should have been in effect at the time of the *New York Post*'s designation as would mean that Plaintiff's newspaper does not meet the Charter's requirements.

Article III standing requires "injury in fact, causation, and redressability." *Diamond Alt. Energy, LLC v. Env. Protection Agency*, 145 S. Ct. 2121, 2133 (2025). The third of those requirements—redressability—"serves to insure that there is a sufficient relationship between the judicial relief requested and the injury suffered." *Id.*

Here, any such relationship is entirely lacking. To the extent Plaintiff wants *Newsday* to be Nassau County's official newspaper, it is only under the amended version of the Charter that *Newsday* qualifies. The pre–June 2024 version of § 2211 of the County Charter limited the newspapers the Legislature could consider for designation to newspapers "having an average daily paid general circulation of not less than fifty thousand within the county." R.1-3 at 6. In enacting the new law, the Legislature removed that outdated requirement. *See* R.1-7 at 9.

Nevertheless, Plaintiff affirmatively alleges that its circulation does not meet the previous law's requirement: it alleges that its "daily print circulation in Nassau County was 33,295" "in the six months ended March 31, 2025." R.22 ¶ 23. Accordingly, if the Court grants Plaintiff's request to invalidate Local Law 4-2024—thus reverting to the pre–June 2024 version of § 2211—Plaintiff's newspaper cannot be lawfully designated the official newspaper of Nassau County.

Nor may Plaintiff rely on any estoppel or holdover effect of the County's previous designations of *Newsday*. In agreeing to serve as the County's official newspaper, as "a party dealing with a municipality[,] [Plaintiff] is chargeable with knowledge of the statutes [that] regulate [the Legislature's] powers *and is bound by them*." *B.T. Skating Corp. v. County of Nassau*, 612 N.Y.S. 2d 199, 200 (App. Div. 2d Dep't 1994) (emphasis added). "[I]t [was] solely at [Plaintiff's] peril that [Plaintiff] presume[d] that the persons with whom [it was] dealing [were] acting within the scope of their authority." *Walentas v. N.Y.C. Dep't of Ports*, 561 N.Y.S.2d 718, 719 (App. Div. 1st Dep't 1990). "[T]he extent of [the Legislature's] authority is a matter of public record [and so] there is a conclusive presumption that [Plaintiff] is aware of it." *Id.* As a result, "estoppel is unavailable against" the Legislature. *Granada Buildings, Inc. v. City of Kingston*, 444 N.E.2d 1325, 1326 (N.Y. 1982).

Here, of course, there is even more reason to charge Plaintiff with knowledge of the statutory limitation that precluded the Legislature from being able to designate *Newsday* as the County's official newspaper: each version of Plaintiff's complaint quotes the pre-2024 version of Section 2211, and each

---

[1] To the extent Plaintiff asserts that the bare violation of the various referendum provisions is itself an injury—an argument it has not to this point made—that contention fails because, as explained below, it has no protectable interest in a referendum in which it cannot participate.

complaint also elides the limiting language, which it knows would doom its claim. R.1 ¶ 28; R.22 ¶ 29; R.30-2 ¶ 29. Because Plaintiff lacks Article III standing to assert its referendum-law claim, its amendment is futile and leave should be denied.

**Plaintiff is not within the zone of interests of any referendum provision it cites.** "Whether a plaintiff comes within the 'zone of interests'" of a particular statute "is an issue that requires [the Court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 130 (2d Cir. 2020) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014) (cleaned up)).

Here, Plaintiff asserts claims under statutory, constitutional, and charter provisions purportedly requiring the Legislature to subject its charter law to a referendum before it takes effect. But Plaintiff has no recourse to those referendum provisions. Those provisions protect the rights of *the relevant electors*, not those of outside parties. In *Gizzo v. Town of Mamaronek*, 824 N.Y.S.2d 366 (N.Y. App. Div. 2d Dep't 2006), the Second Department considered whether the petitioner—a police officer employed by but not resident in Mamaronek—could sue the town under the New York Constitution and Section 23 of the Home Rule Law for failing to submit a change in the police disciplinary-proceeding law to a referendum. *Id.* at 370–71. The Second Department explained that "the purpose of the referendum requirement is to ensure that electors have a voice when substantial changes are proposed to the powers of the officials whom they elect." *Id.* "Since the petitioner is not an elector, he is thus not within the zone of interests the statute seeks to protect and is, therefore, without standing to challenge the local law on that basis." *Id.* The Court of Appeals reached a similar conclusion: "in view of the fact that the people of the county chose their form of government, it is certainly appropriate that *they* have an opportunity to speak on a major and substantive alteration of that form of government." *Morin v. Foster*, 380 N.E.2d 217, 294 (1978) (emphasis added).

*A fortiori* here. Not only is Plaintiff not a Nassau County elector, it is a corporation and thus *not an elector at all*. It has no cause of action under the Home Rule Law, under the New York Constitution, or under (especially) the Nassau County Charter to challenge, in place of Nassau County's voters, the absence of a referendum that any of those voters could have sought but none did. The *Gizzo* court explained that "[i]t certainly cannot be said that the purpose of the [Home Rule Law] was to protect the interests of a police officer in the conduct of a disciplinary proceeding." 824 N.Y.S.2d at 167. It similarly cannot be said that the referendum laws' purpose is to protect the antiquated interests of a print newspaper in its profit from having legal notices printed in its pages. Because Plaintiff is not in the zone of interest protected by *any* New York referendum law, its contention to that effect is nonjusticiable.

**This Court should not defer this question, because Plaintiff has already caused undue delay and prejudice to Defendants.** The Federal Rules contemplate one amendment as of right. Fed. R. Civ. P. 15(a)(1). Plaintiff has already had that amendment. *See generally* R.22. There is no reason to allow Plaintiff another, futile amendment. Nor should the Court delay determining—with no responsive argument from Plaintiff—that amendment would be futile. Indeed, the Court could in fact reject the amendment for several other reasons as well.

Plaintiff's argument (R.30 at 2–3) that there has been no undue delay in bringing its new claims is transparently incorrect. New York law imposes on plaintiffs suing government officials a notice-of-claim requirement, requiring that notice to be filed within ninety days of the challenged action. N.Y. Gen. Mun. Law § 50-I(1). Plaintiff had reason to know it would bring the new claims it now seeks to assert—all of which are based on *the same single* underlying act—at the time it served its Notice of Claim in January. It noticed none of them. That is the very essence of undue delay. *See In re Keurig*

*Green Mountain Single-Serve Coffee Antitr. Litig.*, 2020 WL 3256871, at *3 (S.D.N.Y. 2020) ("when a proposed amendment is based on information that the party knew or should have known prior to the deadline to file an amendment, leave to amend is properly denied") (cleaned up). What Plaintiff seeks now is, in essence, a back-door amendment of that Notice of Claim that is out of time. N.Y. Gen. Mun. Law § 50-E(1)(a), (5). That is simply improper. *See Procter & Gamble Co. v. Hello Prods., LLC*, 2015 WL 2408523, at *1 (S.D.N.Y. May 20, 2015) (finding undue delay and prejudice when the plaintiff knew the information well before the deadline to amend but waited months to move to amend).

Nor is Plaintiff correct (at 3) that Defendants would not be prejudiced by the Court's failure to reject its futile amendment. Defendants focused their § 50-H examination preparation and questions to Plaintiff's witness on the lone theory Plaintiff *had* noticed—and Plaintiff wasted Defendants' time and resources by presenting a witness who had no knowledge of the bases of Plaintiff's undercooked state-law claims. It now asks to waste more of both by requiring Defendants to respond on the merits not just to one meritless and nonjusticiable claim but to two, asserting three non-noticed theories to which Defendants have merits defenses. Counsel will need to research those defenses, advise their clients, contend with these zombie claims during mediation, and expend limited argument space in their motion to dismiss, *all* of which constitutes prejudice. This Court should instead simply reject the claims now because they are facially nonjusticiable.

The waste of the Court's resources on Plaintiff's newly devised legal theories is similarly plain. Indeed, Plaintiff is simply wrong that "[t]here is no efficiency to be gained … by denying leave to amend." Because Plaintiff lacks standing to bring its referendum claims, the Court is deprived of its jurisdiction to consider Plaintiff's referendum-law claim and must dismiss it. "A federal court must always satisfy itself that it has jurisdiction." *Riley v. Bondi*, 145 S. Ct. 2190, 2201 (2025). The Second Circuit's "strong preference for resolving disputes on the merits," R.30 at 3, has no application to *non*-cases and *non*-controversies that are not properly before a federal court. If the Court agrees with Defendants that Plaintiff lacks standing, it lacks "all authority to hear" Plaintiff's existing or proposed referendum-laws claims and may not thereafter proceed to consider them on a motion to dismiss. *Id.* ("even if the parties fail to spot a jurisdictional issue or agree that the court has jurisdiction, the court *cannot proceed* unless it makes an independent determination that it has jurisdiction") (emphasis added). Here, given that Plaintiff has affirmatively alleged facts making clear that its purported injury is not redressable by a favorable decision, there is no need to go further.

But even if the Court merely applies the New York law that squarely holds Plaintiff is not an interested party that can sue for violation of the referendum provisions, it is better to say so now, so that the parties can devote their limited resources to contesting the justiciable matters over which merits disputes may proceed as far as a motion to dismiss.

***

Plaintiff's referendum-law claims, as drafted or as amended, will not survive a motion to dismiss. Plaintiff offers neither argument nor any other reason to believe otherwise. Plaintiff's unsupported request that this Court exercise its discretion to prejudice Defendants with more delay and more legal costs should be denied. Leave to amend should be denied, and Plaintiff's referendum-law claims should be dismissed for want of subject-matter jurisdiction and, in the alternative, because Plaintiff has no cause of action to assert them.

Respectfully submitted,
*/s/ Todd G. Cosenza*
Todd G. Cosenza