**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| NEWSDAY LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-01297 DG ARL |
| | ) | |
| NASSAU COUNTY; NASSAU | ) | |
| COUNTY LEGISLATURE; and BRUCE | ) | |
| BLAKEMAN, in his individual capacity, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Date of Service: January 30, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 3

    A.    Factual Background. .............................................................................................. 3

    B.    Procedural Background. ......................................................................................... 5

LEGAL STANDARD ........................................................................................................... 7

ARGUMENT ....................................................................................................................... 8

I.    Plaintiff's § 1983 Claim is Barred by Legislative Immunity. ....................................... 8

    A.    The Legislature and Mr. Blakeman Are Entitled to Absolute Immunity. ......................... 8

    B.    Plaintiff's Claims Are Barred by Qualified Immunity. .............................................. 12

II.    Plaintiff's § 1983 Claim Fails on the Merits. ........................................................... 13

    A.    Plaintiff Has Not Stated a Private-Citizen Retaliation Claim. ..................................... 14

    B.    Plaintiff Was Not a Public Employee or Contractor for 2025. ..................................... 17

    C.    Plaintiff Does Not Allege a Policy or Custom of Violating its Rights. .......................... 17

    D.    Defendants' Actions Were Protected Government Speech. .......................................... 18

III.    This Court Need Not and Should Not Exercise Supplemental Jurisdiction. ..................... 19

IV.    Plaintiff Failed to Comply With New York's Notice Requirements. ............................... 20

V.    Plaintiff's Home Rule Law Claims Fail. ................................................................. 20

    A.    Plaintiff Lacks Standing to Bring this Claim. .......................................................... 21

    B.    The Legislature Properly Amended the County Charter. ............................................ 21

        1.    This Law Did Not Curtail the Legislature's Power. ................................................ 21

        2.    Even If This Law Had Curtailed the Legislature's Power, as a Charter Law it is Not Subject to Referendum. ........................................................................................................ 22

VI.    Plaintiff's Open Meetings Law Claim Fails. ............................................................ 24

    A.    Plaintiff Has Not Alleged That the Proposed Resolution Was Required to be Made Available in Advance of the December 16 Meeting. .......................................................... 24

    B.    Plaintiff's Website Argument is at War With the Text of the Open Meetings Law. ...... 24

CONCLUSION .................................................................................................................. 25

**TABLE OF AUTHORITIES**

**Cases**      **Page(s)**

*Almonte v. City of Long Beach*,
478 F.3d 100 (2d Cir. 2007).................................................................................9

*Arbeeny v. Cuomo*,
2025 WL 71729 (E.D.N.Y. Jan. 10, 2025) ........................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................7, 8, 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................7

*Bogan v. Scott-Harris*,
523 U.S. 44 (1998)................................................................................8, 10

*Branzburg v. Hayes*,
408 U.S. 665 (1972)..................................................................................15

*Brennan-Centrella v. Ritz-Craft Corp.*,
942 F.3d 106 (2d Cir. 2019)........................................................................25

*Chi., B. & Q.R. Co. v. Otoe Cnty.*,
83 U.S. 667 (1872)...................................................................................14

*Coads v. Nassau Cnty.*,
84 Misc. 3d 813 (N.Y. Sup. Ct. 2024) ...............................................................8

*Curley v. Village of Suffern*,
268 F.3d 65 (2d Cir. 2001)...............................................................14, 15, 16

*Davis v. Town of Riverhead*,
2022 WL 939739 (E.D.N.Y. Mar. 29, 2022).......................................................5

*Decker Advertising Inc. v. Delaware Cnty.*,
765 F. Supp. 3d 128 (N.D.N.Y. 2025)..........................................................11, 12

*Drayton v. Mayor & Council of Rockville*,
699 F. Supp. 1155 (D. Md. 1988) ...............................................................10, 11

*Freeman v. Town of Irondequoit*,
2023 WL 7013409 (2d Cir. 2023).............................................................9, 10, 11

*Gizzo v. Town of Mamaronek*,
824 N.Y.S.2d 366 (N.Y. App. Div. 2006) ..........................................................21

*Kiernan v. Town of Southampton*,
2015 WL 1258309 (E.D.N.Y. Mar. 17, 2015).....................................................13

*Laird v. Tatum*,
408 U.S. 1 (1972)....................................................................................15

*Legal Servs. Corp. v. Velazquez*,
531 U.S. 533 (2001)...............................................................................18, 19

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................................................................................ 21

*Matthews v. City of N.Y.*,
779 F.3d 167 (2d Cir. 2015) ........................................................................................... 17

*In re Merrill Lynch Ltd. Partnerships Litig.*,
154 F.3d 56 (2d Cir. 1998) ............................................................................................. 20

*Monell v. Dep't of Soc. Servs. of N.Y.*,
436 U.S. 658 (1978) ........................................................................................................ 17

*Nat'l Credit Union Admin. v. 1st Nat'l Bank & Tr. Co.*,
522 U.S. 479 (1998) ........................................................................................................ 21

*Orange v. Cnty. of Suffolk*,
830 F. Supp. 701 (E.D.N.Y. Sept. 13, 1993) ................................................................. 10

*Pani v. Empire Blue Cross Blue Shield*,
152 F.3d 67 (2d Cir. 1998) ............................................................................................. 18

*Pearson v. Callahan*,
555 U.S. 223 (2009) ........................................................................................................ 12

*Pleasant Grove City v. Summum*,
555 U.S. 460 (2009) ........................................................................................................ 19

*Rust v. Sullivan*,
500 U.S. 173 (1991) ........................................................................................................ 14

*Scott v. City of N.Y.*,
836 N.Y.S.2d 140 (N.Y. App. Div. 1st Dep't 2007) ...................................................... 20

*Shurtleff v. City of Bos.*,
596 U.S. 243 (2022) ................................................................................................... 18, 19

*Somin v. Total Cmty. Mgmt. Corp.*,
494 F. Supp. 2d 153 (E.D.N.Y. June 26, 2007) ............................................................. 19

*Spallone v. U.S.*,
493 U.S. 265 (1990) .......................................................................................................... 8

*State Emps. Bargaining Agent Coal. v. Rowland*,
494 F.3d 71 (2d Cir. 2007) .................................................................................... 9, 10, 11

*Supreme Ct. of Virginia v. Consumers Union of United States, Inc.*,
446 U.S. 719 (1980) .......................................................................................................... 9

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
576 U.S. 200 (2015) ........................................................................................................ 18

**Statutes**

28 U.S.C. § 1367 .................................................................................................................... 20

42 U.S.C. § 1983 ............................................................................................................. *passim*

Nassau Cnty. Charter § 2211 .................................................................. *passim*

N.Y. Cnty. Law § 214 ...............................................................11, 12, 13, 19

N.Y. Gen. Mun. Law § 50-e ....................................................................7, 20

N.Y. Gen. Mun. Law § 50-h ............................................................2, 6, 7, 20

N.Y. Mun. Home Rule Law § 23 ....................................................6, 21, 22

N.Y. Mun. Home Rule Law § 34 ............................................................23, 24

N.Y. Pub. Off. Law § 86 ...........................................................................25

N.Y. Pub. Off. Law § 103 ................................................................3, 24, 25

**Constitutional Provisions**

U.S. Const. amend. I .............................................................................. *passim*

**Other Authorities**

SUMMARY REPORT: OFFICIAL RESULTS, GENERAL ELECTION (Nov. 4, 2025),
  https://tinyurl.com/msrd44f6. ...................................................................5, 19

**INTRODUCTION**

This case concerns Plaintiff's effort to preserve its preferential treatment at the expense of the Nassau County Legislature's authority to pass necessary laws. Until 2024, outdated laws required Nassau County to designate an "official newspaper," a status that guaranteed County-paid advertising—a benefit any newspaper would covet. To qualify for that benefit, the official newspaper had to have a minimum daily print circulation within the county of 50,000. The Nassau County Legislature designated Plaintiff's daily print newspaper *Newsday* as the County's official newspaper for many years. But the way County residents consumed news changed, with the vast majority switching from print to digital sources. In a county of more than 1.3 million people, *Newsday* circulated to less than three percent of the population.

The Legislature recognized this shift and, in 2024, enacted a law modernizing official-newspaper designations. Recognizing that constituents preferred digital to print, the Legislature eliminated the minimum print circulation requirement. Separately, it authorized the designation of online resources as disseminators of public notices—the modern equivalent of an official newspaper. The law gave the County Executive authority to designate official online resources and required the Executive to make a nonbinding recommendation to the Legislature for an official print newspaper. Acting under that law, at a public meeting, the County Legislature designated the *New York Post* as the County's official newspaper for 2025.

Plaintiff asserts four claims against Defendants arising from these much-needed updates. First, Plaintiff contends under 42 U.S.C. § 1983 that the Legislature's selection of the *New York Post* instead of *Newsday* violated Plaintiff's First Amendment rights. Second, Plaintiff alleges that the Legislature violated the Municipal Home Rule Law and the Nassau County Charter by enacting Local Law 4-2024 without subjecting it to a mandatory referendum. Third, Plaintiff asserts that

1

Defendants violated the New York Constitution and Municipal Home Rule Law by not submitting Local Law 4-2024 ("L.L.4-2024") to the voters for a permissive referendum. Finally, Plaintiff alleges a violation of the New York Open Meetings Law for not providing advance notice of the proposed resolution designating the *Post* as the County's official newspaper for 2025.

All of those claims lack merit. *First*, Defendants enjoy both absolute legislative immunity and qualified immunity for their official actions, so Plaintiff's § 1983 claim fails at the threshold. It also fails on its own terms because Plaintiff cannot show any First Amendment right to be designated the County's official newspaper. As the Second Amended Complaint (the "SAC") itself makes clear, Plaintiff was not cut off from either access to news or County advertising money. At most, the SAC suggests Plaintiff now receives less access or funding than it once did. And, critically, Plaintiff does not even attempt to allege that its speech was chilled—a necessary element of a First Amendment retaliation claim.

Plaintiff's state-law claims should be dismissed because Plaintiff failed to participate meaningfully in the § 50-h proceedings required by state law. Plaintiff sent an advertising executive, Jason Neknez, whose inability to answer even basic questions about the factual bases of Plaintiff's claims unnecessarily consumed taxpayer-funded resources the County expended preparing for and conducting the §50-h hearing.

Separately, Plaintiff lacks standing to bring its state law claims because (1) it is not a Nassau County resident, and (2) its alleged injury is not redressable by any action of this Court. Under the prior version of the designation provision—the version Plaintiff contends should continue to govern—*Newsday* does not satisfy the circulation requirements to qualify as an official County newspaper. Those state-law claims also fail on the merits. Plaintiff's New York Constitution and Municipal Home Rule Law theories rest on the contention that the designation-

process amendment "purported to abolish, transfer, or curtail" the Legislature's power by requiring the County Executive to provide a nonbinding recommendation to the Legislature. But even after it enacted L.L.4-2024, the Legislature retained the full power to designate an official newspaper. Equally unavailing is Plaintiff's Open Meetings Law claim. The statute's plain text requires that Defendants "ma[k]e available" the legislative proposal only "upon request therefor"[1]—and Plaintiff nowhere alleges that it made such a request.

Plaintiff seeks, in effect, to replace the County Legislature's judgment that the *Post* should be the County's official paper with Plaintiff's own contrary view, under which *Newsday* alone would hold that designation—enforced by an injunction—in perpetuity. Plaintiff is free to hold that view, but it cannot impose it on Nassau County. Its SAC should be dismissed.

## BACKGROUND

### A.    Factual Background.

***The parties.*** Defendant Nassau County is a municipal corporation constituting one of New York's most densely populated counties, located on Long Island. Its government comprises Defendants Nassau County Executive Bruce Blakeman and the Nassau County Legislature. *See* ¶¶ 12–14.[2] Plaintiff Newsday LLC is a Delaware corporation whose primary business is the publication and distribution of *Newsday*, a daily print newspaper based in Melville, New York (which is in Suffolk County), and publishing and maintaining its associated website. *See* ¶ 11.

***This dispute.*** Among the Nassau County Legislature's many duties is the annual designation of an official paper for Nassau County. The "official newspaper" designation carries with it a duty to print public notices of governmental actions. *E.g.*, ¶¶ 25–26 & nn.4–5.

---

[1] *See* N.Y. Pub. Off. Law § 103(e).

[2] Citations to paragraphs in this brief are to the Second Amended Complaint, R.39.

3

Designation as a county's official paper—at least when the county is as large and populous as Nassau—can result in significant revenues for a newspaper. For many years, the Nassau County Legislature chose to designate *Newsday* as the County's official newspaper. *See* ¶¶ 28–31. Plaintiff alleges that it earned approximately $200,000 "in both 2023 and 2024" from its official-newspaper duties and related advertising. ¶ 32.

Before June 2024, the Nassau County Charter provided that members of the Legislature representing the

> two political parties whose candidate for governor received the highest and next highest number of votes in the county at the last general election at which a governor was chosen … shall on or before January fifteenth in each year designate in writing a newspaper published daily and having an average daily paid general circulation of not less than fifty thousand within the county, to be an official newspaper of the county for the ensuing year or until its successor is designated.

Nassau Cnty. Charter, § 2211(b) (Jan. 1, 2024). *Newsday* does not qualify for designation under those criteria. ¶ 23 (alleging that *Newsday*'s "daily print circulation in Nassau County was 33,295" in the six-month period ending March 31, 2025).

In June 2024, however, the Legislature passed Local Law 4-2024, which amended § 2211 to eliminate the print-circulation requirement, to add the option for the County Executive "subject to the approval of the County Legislature" to designate "one or more online news media websites" as "newspapers" for the publication of public notices, and to require the County Executive to recommend an official newspaper to the Legislature. *See* ¶¶ 56–57; R.39-5 at 9. Though Plaintiff alleges that the Executive's role is "controlling," ¶ 53, the text of the law provides otherwise:

> The County Executive shall on or before January sixth in each year *recommend, subject to approval by the County Legislature*, a newspaper published daily to be an official newspaper of the county for the ensuing year or until its successor is designated. Thereafter, *the County Legislature shall* on or before January fifteenth in each year *designate in writing a newspaper*

4

published daily to be an official newspaper of the county for the ensuing year
or until its successor is designated.

Nassau Cnty. Charter, § 2211(b) (current) (emphasis added).  As with the previous version of the law, the Legislature retains the sole authority to "designate … a newspaper … to be an official newspaper."  *Id.*  The County Executive's role is limited to "recommend[ation]," and is "subject to approval by the County Legislature."  *Id.*

On December 9, 2024, Mr. Blakeman recommended that the Legislature designate the *New York Post* as the County's official newspaper for 2025.  ¶ 61.  On December 16, 2024, during a regularly scheduled meeting, the Legislature voted to designate the *New York Post* as the County's official newspaper for 2025.  ¶ 68.  Plaintiff does not allege that it requested any notice of the proposals to be voted on at that meeting.  *See generally* R.39.  Legislators voting for the proposal cited, as reasons for designating the *Post*, the paywall on *Newsday*'s website and Plaintiff's failure to be forthcoming about its circulation numbers.  Ex. A at 103:18–20, 108:11–19.[3]

In November 2025, the voters of Nassau County reelected Mr. Blakeman and fifteen incumbent legislators.  Summary Report: Official Results, General Election (Nov. 4, 2025) ("2025 Election Results"), https://tinyurl.com/msrd44f6.[4]  While four of the nineteen legislators were newly elected, only one district changed parties from Republican to Democratic, and the Republican Party maintains a majority.  *See id.*

### B.  Procedural Background.

On January 28, 2025, Plaintiff served the County with a Notice of Claim (the "NOC")

---

[3] The full transcript of the December 16, 2024 meeting is available at https://tinyurl.com/yey54fuv. Relevant excerpts are attached for the Court's convenience as Exhibit A.
[4] This Court may take judicial notice of election results.  *See, e.g.*, *Davis v. Town of Riverhead*, 2022 WL 939739, at *5 n.3 (E.D.N.Y. Mar. 29, 2022) (taking judicial notice of Suffolk County records of election results).

asserting violations of the New York Municipal Home Rule Law ("N.Y.H.R.L.") and the Open Meetings Law.  Notice of Claim (Jan. 28, 2025), Ex. B.  In the NOC, Plaintiff asserted that L.L.4-2024 was invalid because it "curtailed" the power of Nassau County legislators but had not been submitted to the County's voters as a referendum.  *Id.*  And it asserted that Defendants had violated the Open Meetings Law by not providing Plaintiff, before the December 16 meeting, with the text of the proposal to designate the *Post* as the County's official newspaper.[5]

Plaintiff filed its initial complaint on March 6, 2025.  R.1.  That complaint asserted only a single claim, alleging that Defendants had violated 42 U.S.C. § 1983 by engaging in "impermissible viewpoint discrimination" against Plaintiff in alleged retaliation for its exercise of what Plaintiff characterized as its First Amendment rights.  *Id.* ¶¶ 74–80.  In the initial complaint, Plaintiff noted its intention to file the additional state-law claims it had noticed in January, after the examination provided for in General Municipal Law § 50-h.  R.1 ¶ 73 & n.39.

Plaintiff designated its Director of Advertising, Jason Neknez, as its § 50-h witness.  *See* Neknez Dep., Ex. C at 11.  During his May 21, 2025 examination, Mr. Neknez confirmed that although he was testifying as Plaintiff's representative, he was unaware of the basis of either Plaintiff's N.Y.H.R.L. claim or its Open Meetings Law claim.  *Id.* at 74–75, 78–79.  After reading the language of L.L.4-2024, Mr. Neknez testified that he was unaware why Plaintiff believed it curtailed any legislator's authority.  *Id.* at 74–75.  And Mr. Neknez testified that he was unaware of any request made to the Legislature that it disclose the text of the resolution, or even whether the resolution had been scheduled to be heard at that December meeting.  *Id.* at 78–79.  He also

---

[5] The NOC is relevant primarily for the legal theories it *did not* assert.  *First*, the Home Rule Law § 23(2)(f) claim Plaintiff noticed did not suggest that Plaintiff believed the Legislature's minority had any power to designate a second official newspaper for the County.  And, *second*, the Open Meetings Law claim did not mention any County website.

contradicted the allegations in the initial complaint concerning damages. *Id.* at 81.

On May 30, 2025, Plaintiff filed its First Amended Complaint, which advanced new legal theories not set out in its NOC. R.22. This, along with Plaintiff's failure to prepare its witness for the hearing, amounted to a second violation of § 50-h.[6] *First*, Plaintiff newly asserted that L.L.4-2024 curtailed the authority of *minority-party* legislators "to separately designate [a second] official newspaper." R.22 ¶ 89. By contrast, in its NOC, it asserted that the local law "would diminish the Legislature's power to choose *an* official newspaper independently and insert the county executive into the designation process." Ex. B ¶ 2 cl. 1 (emphasis added). *Second*, Plaintiff claimed that Defendants' alleged failure to post the contents of the December 16, 2024 *New York Post* proposal on the County's website—and not just its failure to provide Plaintiff with notice of the proposal—violated the Open Meetings Law. R.22 ¶¶ 97–98.

On November 10, 2025, Plaintiff filed its SAC. R.39. There, Plaintiff asserted yet another new legal theory, and alleged that the Legislature violated both the New York Constitution and an additional provision of the N.Y.H.R.L. based on Defendants' purported failure to submit L.L.4-2024 to Nassau County voters for a permissive referendum. ¶¶ 95–97.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must, on its face, state "a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A claim is facially plausible only when the facts alleged, taken as true, "allow[]

---

[6] "Where a demand for examination has been served as provided in subdivision two of this section no action shall be commenced against the city, county, town, village, fire district or school district against which the claim is made unless the claimant has duly complied with such demand for examination, which compliance shall be in addition to the requirements of section fifty-e of this chapter." N.Y. Gen. Mun. Law § 50-h (5). Under N.Y. Gen. Mun. Law §50-e(2), the notice of claim must include "the nature of the claim" and "the items of damage or injuries claimed to have been sustained so far as then practicable." *See* N.Y. Gen. Mun. Law § 50-e(2)

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Though the Court must accept as true all factual allegations and draw reasonable inferences for the plaintiff, it need not accept legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**ARGUMENT**

**I.      Plaintiff's § 1983 Claim is Barred by Legislative Immunity.**

The Legislature and Bruce Blakeman are immune from suit for Plaintiff's claims, and so the claims must be dismissed in full as against those defendants. Government officials are generally protected from lawsuits for discretionary actions taken as part of their official duties. Here, both the Legislature and Mr. Blakeman have absolute legislative immunity for the conduct alleged. Even if absolute immunity did not apply, they would still be protected by qualified immunity because their actions did not violate any clearly established right of the Plaintiff. Once the § 1983 claims are dismissed, Plaintiff's remaining claims also fail.

**A.      The Legislature and Mr. Blakeman Are Entitled to Absolute Immunity.**

"[S]tate and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). "Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Id*. at 54; *see also Coads v. Nassau Cnty.*, 84 Misc. 3d 813, 826–27 (N.Y. Sup. Ct. 2024) (finding that county legislators "are entitled to absolute immunity … from civil liability for their legislative acts within the sphere of legitimate legislative activity in both federal and state courts"). Courts have historically provided absolute immunity in furtherance of the principle that "any restriction on a legislator's freedom undermines the 'public good' by interfering with the rights of the people to representation in the democratic process." *Spallone v. United States*, 493 U.S. 265, 279 (1990). "[W]hether immunity attaches turns not on the official's identity, or even on the official's motive

8

or intent, but on the nature of the act in question." *Almonte v. City of Long Beach*, 478 F.3d 100, 106 (2d Cir. 2007).

Plaintiff's contention (previewed in its letters) that absolute immunity protects only individual legislators and not the Legislature as a whole fails. *See Supreme Ct. of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 733–34 (1980) ("[T]here is little doubt that if the Virginia Legislature had enacted the State Bar Code and if suit had been brought against *the legislature*, its committees, *or members* for refusing to amend the Code in the wake of our cases indicating that the Code in some respects would be held invalid, the defendants in that suit could successfully have sought dismissal on the grounds of absolute legislative immunity.") (emphasis added). Legislative immunity also reflects the practical reality that claims against a democratically elected legislature for its acts as a legislature are not redressable by a judgment of this Court—and thus that Plaintiff lacks standing for its claims against the Legislature here. While this Court may rule on whether a previously passed law or its enforcement yields some violation of a superior law or constitution, it has no authority to enjoin or otherwise order a legislature, *ex ante*, to take some legislative act or refrain from doing so.

"[T]wo factors are relevant in determining whether a [state official's] acts are within the sphere of legitimate legislative activity. First, it is relevant whether the [official's] actions were legislative 'in form,' i.e., whether they were 'integral steps in the legislative process.' Second, it may also be relevant whether [the official's] actions were legislative 'in substance,' i.e., whether the actions 'bore all the hallmarks of traditional legislation,' including whether they 'reflected … discretionary, policymaking decision[s] implicating the budgetary priorities of the [government] and the services the [government] provides to its constituents." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 89 (2d Cir. 2007); *see also Freeman v. Town of Irondequoit*, 2023

WL 7013409, at *3 (2d Cir. Oct. 25, 2023) (legislative activities "include discretionary decisions implicating budgetary priorities and the services provided to constituents").

Legislative immunity also shields executive and judicial officials when they act in a legislative capacity. *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 82 (2d Cir. 2007). Thus, when an executive official recommends legislative action that the legislature then adopts, that executive is *also* absolutely immune from suit for that recommendation. *See Orange v. Cnty. of Suffolk*, 830 F. Supp. 701, 706 (E.D.N.Y. 1993) (A "city manager who proposed the elimination of a municipal position which is subsequently abolished by act of [the] city council is entitled to legislative immunity") (citing *Drayton v. Mayor & Council of Rockville*, 699 F. Supp. 1155, 1156-57 (D. Md. 1988)). *Drayton* is particularly instructive. There, the court emphasized that the city manager "lacked the power to eliminate plaintiff's, or anyone else's, job," 699 F. Supp. at 1156–57, and possessed only the power of "recommendation," *id.* at 1158. In short, the city manager "only proposed; the City's legislature disposed," and both were entitled to legislative immunity as a result. *Id.* at 1157.

Here, the choice of which newspaper will publish public notices—including legislative news—at taxpayer expense is a quintessential discretionary judgment that "implicat[es] budgetary priorities and services provided to constituents." *See Freeman*, 2023 WL 7013409, at *3. Deciding how to allocate approximately $200,000 of County funds, ¶ 32, to "reach[] as many members of the public as possible," ¶ 27, is, by definition, a determination about how to spend County money to provide County services to County constituents. It is therefore a legislative act for which the Legislature is absolutely immune. *See Bogan*, 523 U.S. at 49.

Mr. Blakeman's recommendation of the *New York Post* was likewise a legislative act. He was, in effect, acting as a *nonvoting* twentieth legislator by offering his view on a legislative matter,

10

which the Legislature was free to accept or reject. As in *Drayton*, his view was purely a *recommendation*—he "only proposed; the [County's] legislature disposed." 699 F. Supp. at 1157. He, too, is absolutely immune. *See Rowland*, 494 F.3d at 90.

Plaintiff argues at length that Defendants acted for political reasons. *E.g.*, ¶¶ 34–52. That is immaterial, as courts view motive as "wholly irrelevant" to whether legislative immunity applies. *Rowland*, 494 F.3d at 90 (citing *Bogan*, 523 U.S. at 55). Plaintiff also cites N.Y. County Law § 214 as a basis for its claim. *See* ¶ 55; ¶ 25 n.2. But that statute—to the extent it applies at all—does not require counties to use content- or viewpoint-neutral criteria. To the contrary, it expressly *requires* consideration of political views in the selection of an official newspaper. N.Y. Cnty. Law § 214(1) ("[C]onsideration shall be given to the newspapers advocating the principles of [the legislators'] political party [and] the support of [that party's] nominees.").

*Decker Advertising Inc. v. Delaware County*, 765 F. Supp. 3d 128 (N.D.N.Y. 2025)—cited by Plaintiff, R.25 at 2—was wrongly decided and is in any event not on point. In *Decker*, Delaware County rescinded its official-newspaper designation from *The Reporter* just two months after choosing it. *Id.* at 137–38. The parties agreed that, at the time, the *Reporter*'s publisher was "operating as a third-party contractor." *Id.* at 142. On that basis, the court treated the county's decision as analogous to an employer "firing a particular employee." *Id.* at 156. But there—as here—the decision to de-designate the *Reporter* concerned the allocation of public funds and the provision of specific public services. Under the Second Circuit's functional definition, that is legislative action. *Freeman*, 2023 WL 7013409, at *3. Legislative immunity should have barred the *Reporter*'s claims. *See Rowland*, 494 F.3d at 90.

But even if *Decker* had been correct on the law, its key facts differ from this case. Here, unlike in *Decker*, *Newsday* was not "de-designated" mid-incumbency. The Legislature conducted

11

its routine annual selection and chose a different paper, as the law anticipates by limiting the designation to one year at a time. Moreover, the *Decker* court reasoned that the decision there "directly impact[ed] *The Reporter* alone" and so fell within the exception that "hiring or firing a particular employee does not have effects that reach beyond that particular employee." 765 F. Supp. 3d at 156. Here, Plaintiff affirmatively alleges that the facts are otherwise: the Legislature's decision to designate the *New York Post* for 2025 affects the County as a whole, ¶¶ 25–27, and the *Post*, ¶ 68, not just Plaintiff.

**B.     Plaintiff's Claims Are Barred by Qualified Immunity.**

Even if this Court were to conclude that Defendants' challenged actions were not legislative in nature, Plaintiff's claims are independently barred by qualified immunity. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (cleaned up). "Where reasonable officers could disagree on the legality of the action at issue in its particular factual context, under then-existing legal precedent, qualified immunity should be granted." *Arbeeny v. Cuomo*, 2025 WL 71729, at *6 (E.D.N.Y. Jan. 10, 2025) (cleaned up).

Plaintiff does not have a First Amendment right to be designated the County's official newspaper. As discussed more fully below, Plaintiff has identified no other violation of a First Amendment right: there has been no chilling of its speech and, for the purposes of the 2025 designation, Plaintiff was not a government contractor or employee entitled to First Amendment protection. Moreover, New York County Law § 214 expressly *requires* political considerations in the designation decision, providing that "consideration shall be given to the newspapers advocating the principles of such political party, [and] the support of its nominees." N.Y. County Law § 214.

12

In other words, to the extent there is a clearly established right at issue here, it is the clearly established right of the Legislature to employ political considerations when making an official-newspaper designation. At a minimum, reasonable legislators in the Legislature's position would have believed that selecting the *New York Post* as the official newspaper was lawful and well within their legislative authority. Where, as here, the governing law admits of reasonable disagreement, qualified immunity applies. Because Plaintiff cannot show a violation of any constitutional or statutory right—let alone one so clearly established that a reasonable legislator would have recognized it—Defendants are entitled to qualified immunity for their discretionary decision to select the *New York Post* as the 2025 official newspaper.

Plaintiff's conclusory and speculative allegations reflect disagreement with the legislative outcome, not any violation of a clearly established right. Qualified immunity thus provides a separate and independent basis for dismissal of the claims against the Legislature and Mr. Blakeman.

## II.     Plaintiff's § 1983 Claim Fails on the Merits.

A claim under 42 U.S.C. § 1983 has two essential elements: (1) the defendant acted under color of state law, and (2) the plaintiff suffered a denial of federal statutory rights or constitutional rights or privileges as a result of the defendant's actions. *Kiernan v. Town of Southampton*, , 2015 WL 1258309, at *11 (E.D.N.Y. Mar. 17, 2015). Plaintiff contends that the Legislature's decision to designate a different newspaper as the County's official newspaper for 2025 violated § 1983 because—it claims—that decision was retaliation for Plaintiff's exercise of its First Amendment rights. ¶¶ 85–87. To state a claim for First Amendment retaliation, a private citizen must plausibly show that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions

effectively chilled the exercise of his First Amendment right." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). Whether Plaintiff alleges Constitutional infringement based on a violation of its rights to freedom of speech, or via employment discrimination, its claim fails. Because Plaintiff has not identified any violation of its constitutional rights, it necessarily cannot plead any County policy or custom causing such a violation. And, in any event, Defendants' choice of an official newspaper is protected *government* speech.

### A. Plaintiff Has Not Stated a Private-Citizen Retaliation Claim.

A government's refusal to fund or subsidize private speech is not, without more, a constitutional violation. As the Supreme Court has explained, "[a] legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right." *Rust v. Sullivan*, 500 U.S. 173, 193 (1991). Absent a violation of the Constitution or a superseding statute, appropriations decisions fall within broad legislative discretion. *E.g.*, *Chi., B. & Q.R. Co. v. Otoe Cnty.*, 83 U.S. 667, 675 (1872) ("No one questions that in the absence of some constitutional inhibition the power of a State to appropriate its money, however raised, is limited only by the sense of justice and by the sound discretion of its legislature.").

While there is no dispute that Plaintiff has a protected interest in publishing newsworthy content, Defendants' designation of the *New York Post* was not motivated or caused by Plaintiff's expressive activities. Nor has it demonstrated that Defendants' designation chilled its speech.

First, Plaintiff has not pleaded facts to establish that Defendants designated the *New York Post* because of Plaintiff's coverage of Defendants. Plaintiff relies on a single text exchange between its criminal justice reporter and a non-party to this suit to suggest that the Legislature— and a majority of its elected members—sought to amend the County charter in response to Plaintiff's concededly negative coverage. *See, e.g.*, ¶ 43. But the Complaint contains no

nonconclusory allegation that Defendants designated the *New York Post* specifically because of Plaintiff's viewpoint or coverage of Defendants. Instead, Plaintiff vaguely asserts that Defendants "decided to inflict direct economic pain on *Newsday* through various schemes, including by removing its longstanding designation as the County's official newspaper, a designation that had provided Newsday a significant income stream by authorizing it to publish notices required by statute." ¶ 6. Those conclusory allegations contradict the contemporaneous record, which reflects multiple neutral reasons for the designation—among them the *New York Post*'s lack of a paywall, its broader readership relative to *Newsday*, and its tendency to misquote legislators of both parties. *See, e.g.*, Ex. A at 107:10–12, 108:2–19.

Second, Plaintiff pleads no facts showing that the designation chilled its speech. Allegations of "a subjective 'chill'"—that is, a plaintiff's general feeling that its rights are being curtailed without any demonstrable objective effect—"are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *See Curley*, 268 F.3d at 73 (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)). When a plaintiff "can show no change in [its] behavior, [it] has quite plainly shown no chilling of [its] First Amendment right to free speech." *Id.* Plaintiff's own allegations make clear that Defendants have not actually affected *Newsday*'s rights. Though Plaintiff characterizes the County's actions as a "blackout" on comments to the paper's reporters, ¶ 38, there is no constitutional right to obtain a "comment" from a public official on any topic, *see* ¶¶ 39–47. While reporters "remain free to *seek* news," the "First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Branzburg v. Hayes*, 408 U.S. 665, 681-82, 684 (1972) (emphasis added). And no member of the public is *entitled* to a comment from any elected official on any topic.

In any event, the alleged "blackout" of which Plaintiff complains is nothing of the sort.

Plaintiff acknowledges that the County continues to places advertisements in *Newsday*, ¶¶ 51, 76; that Plaintiff always had full access to County press releases through its own employee, ¶ 48; and that it now receives *additional* access through a "general Newsday newsroom email address," ¶ 49. By Plaintiff's own pleading, *its employee's* withholding of "advisories for press conferences and public statements" from Plaintiff was the reason it failed to receive those advisories. ¶ 48. The Complaint thus reduces to two grievances: Plaintiff no longer receives the same level of County advertising revenue it once did, and its *own internal practices* meant that for a time access to County news was not as convenient as it would prefer. *See, e.g.*, ¶¶ 49, 50. These affirmative allegations make clear that Defendants curtailed no First Amendment right.

Equally telling is what Plaintiff does not allege: any change in *Newsday*'s conduct. It identifies no County effort at prior restraint of what it concedes was "critic[al]" coverage of the Legislature's and Executive's actions. ¶¶ 35–36. Nor does Plaintiff allege that fear has driven it to stop reporting on the Defendants or to scrap editorials critical of them. There has, in other words, not even been a subjective chill—much less the *objective* one necessary for Plaintiff to allege a § 1983 claim for a First Amendment violation. *See Curley*, 268 F.3d at 73. Accordingly, Plaintiff's claim fails.

Separately, Plaintiff has also not established any causal connection between Mr. Blakeman's alleged comments and Plaintiff's claimed injury. Mr. Blakeman's role is confined to "recommend[ing]" to the Legislature that it designate a particular paper. *See* R.39-5 at 9. The Legislature is not obligated to adopt that nonbinding recommendation—and Plaintiff advances no theory, legal or factual, under which the Legislature would be so bound. Nor does Plaintiff offer any other theory by which Mr. Blakeman's minimal involvement in the designation process could give rise to liability. Plaintiff's claim against Mr. Blakeman thus fails on this basis.

**B.       Plaintiff Was Not a Public Employee or Contractor for 2025.**

To the extent Plaintiff intends to assert an adverse employment action, that claim fails.  *See Matthews v. City of N.Y.*, 779 F.3d 167, 172 (2d Cir. 2015) (outlining elements of First Amendment retaliation claim for public employees).  Regardless of whether Plaintiff could be considered a public employee or contractor *during its incumbency* as the County's official newspaper in 2024, it had no contract or employment right to be designated as the County's official newspaper for 2025.  The Legislature did not terminate that incumbency prematurely; it merely made a different choice for the next official newspaper during its annually required process.

**C.       Plaintiff Does Not Allege a Policy or Custom of Violating its Rights.**

Plaintiff seeks to hold the County liable for acts of the Legislature and County Executive.  But municipal liability under § 1983 cannot rest on a *respondeat superior* theory.  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978).  Instead, Plaintiff must allege that the violation of its constitutional "right[], privilege[], or immunit[y]," 42 U.S.C. § 1983, was the result of an official policy or custom.  *Id.*

Plaintiff pleads neither.  Its failure to allege even *one* concrete instance in which a right was violated forecloses any contention that the County maintained a custom of violating Plaintiff's rights.  As to policy, the only relevant one identified is the statutory framework under which the Legislature annually designates an official newspaper.  To state a claim, Plaintiff would need to plausibly allege that, by carrying out this statutory duty, the County infringed Plaintiff's First Amendment rights.  It has not.  The Complaint's bare assertion that "the revocation of Newsday's official newspaper designation[] constitutes impermissible viewpoint discrimination and other unconstitutional acts" is precisely the sort of "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" that warrants dismissal.  *Iqbal*, 556 U.S. at 678.

Nor is the Court required to give credence to Plaintiff's legal conclusion that the designation of the *New York Post* amounted to a "revocation" of *Newsday*'s designation. *Id.* Consistent with the statute's annual process, *see* § 2211, the Legislature made a different designation for the ensuing year.

**D.      Defendants' Actions Were Protected Government Speech.**

The Legislature's designation of the *New York Post* reflects government speech. *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 541 (2001) ("[V]iewpoint-based funding decisions can be sustained in instances in which the government is itself the speaker."). Under the government-speech doctrine, when the government is communicating its own message—including through funding or administering a program—it may control the content of that speech without triggering First Amendment constraints. *See Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 207 (2015) (noting that "government actions and programs that take the form of speech[] do not normally trigger the First Amendment rules designed to protect the marketplace of ideas").

Although government speech is an affirmative defense, courts may resolve affirmative defenses that appear on the face of the complaint at the motion-to-dismiss stage. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). The SAC makes clear that Defendants' decision to speak through the *New York Post* instead of through *Newsday* is not an infringement of any of Plaintiff's rights, but a legitimate exercise of government speech.

In assessing whether the official-newspaper designation constitutes government speech, the Court considers "the history of the expression at issue; the public's likely perception as to who (the government or a private person) is speaking; and the extent to which the government has actively shaped or controlled the expression." *Shurtleff v. City of Bos.*, 596 U.S. 243, 252 (2022). As the Second Amended Complaint confirms, all three of those factors favor treating the

designation as government speech. *First*, the "history of the expression"—by Plaintiff's own account—is longstanding and has always been vested in the government. *See, e.g.*, ¶ 8 ("The County Charter had long vested this authority to designate the official Nassau County newspaper exclusively in the Legislature."). Second, given that history, the public would reasonably view the selection of an official County newspaper as a governmental choice, not one made by Plaintiff or any other private actor. And third, as Plaintiff alleges, the government has at all times actively controlled this expression of its preference. *E.g.*, ¶ 9.

Even if the decision to designate the *New York Post* were "viewpoint"-based, as Plaintiff contends, Defendants were entitled to express that viewpoint. *See* ¶ 66; *Velazquez*, 531 U.S. at 541; *see also* N.Y. Cnty. Law § 214(2). The government retains broad discretion to express its own views in furtherance of what it deems the public interests. *Pleasant Grove City v. Summum*, 555 U.S. 460, 467–68 (2009) ("A government entity has the right to speak for itself.… It is entitled to say what it wishes … and to select the views it wants to express.") (cleaned up). And because the Constitution "relies first and foremost on the ballot box, not on rules against viewpoint discrimination, to check the government when it speaks," *Shurtleff*, 596 U.S. at 252, Plaintiff's remedy lies with the voters, not this Court.

The voters have spoken. *See* 2025 Election Results, https://tinyurl.com/msrd44f6.

## III. This Court Need Not and Should Not Exercise Supplemental Jurisdiction.

If this Court dismisses Plaintiff's § 1983 claim, it should not exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. "Where … the court has dismissed before trial the only basis for federal jurisdiction, the court should decline to exercise jurisdiction over the pendent state claims." *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 160 (E.D.N.Y. 2007) (collecting cases); *see* 28 U.S.C. § 1367(c)(3). *In re Merrill Lynch Ltd. Partnerships Litig.*,

154 F.3d 56, 61 (2d Cir. 1998) (noting that the Second Circuit and "the Supreme Court have held that when the federal claims are dismissed the state claims should be dismissed as well.") (cleaned up). As discussed, Plaintiff's First Amendment claims should be dismissed, and this Court should accordingly decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## IV. Plaintiff Failed to Comply With New York's Notice Requirements.

Plaintiff did not comply with the notice-of-claim requirements of New York General Municipal Law §§ 50-e and 50-h. First, Plaintiff designated a witness with no knowledge of the factual basis for its claims. Ex. C at 74–75, 78–79. Second, Plaintiff flouted the notice requirements by fundamentally changing the theories it noticed in the NOC. That NOC asserted that L.L.4-2024 "would diminish the Legislature's power to choose an official newspaper independently and insert the county executive into the designation process." Ex. B ¶ 2 Cl. 1. The SAC claims something else—that the law eliminated *minority*-party legislators' alleged *separate* power to designate a *second* official paper. ¶ 90; *see also id.* ¶ 30 n.6. Plaintiff likewise recasts its Open Meetings Law claim because it did not comply with the requirements necessary to support its original claim. Such "substantive changes in the theory of liability" are not proper subjects of amendment. *Scott v. City of N.Y.*, 836 N.Y.S.2d 140, 142 (N.Y. App. Div. 1st Dep't 2007).

## V. Plaintiff's Home Rule Law Claims Fail.

Even if this Court allows the state-law claims to proceed despite Plaintiff's noncompliance with the notice requirements, the Home Rule Law claims against the Legislature fail on multiple grounds. First, because Plaintiff is not eligible for designation under the version of the law it says remains in effect, a favorable ruling would not redress its injury, so it lacks standing. Second, the amendment did not curtail the Legislature's authority. Third, even if it did, because the law amended the County Charter, it was subject to referendum only if five percent of the County's

voters protested it within sixty days of passage.

**A.      Plaintiff Lacks Standing to Bring this Claim.**

Standing is a constitutional prerequisite to this Court's subject-matter jurisdiction.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  To establish standing, Plaintiff must show its asserted injury is likely to be redressed by a favorable decision.  *Id.*  It cannot.

Even if the Nassau County Legislature's selection of the *New York Post* as the County's official newspaper could be deemed an injury traceable to the Legislature, a decision for Plaintiff would not redress it.  Plaintiff contends that L.L.4-2024 was improperly enacted and so the prior version of § 2211 should remain in effect.  ¶¶ 90–93.  But *Newsday* does not qualify under that prior law.  Only a "newspaper … *having an average daily paid general circulation of not less than fifty thousand within the county*" may be selected.  Nassau Cnty. Charter § 2211 (Jan. 2024) (emphasis added).  Plaintiff alleges a "daily print circulation in Nassau County [of] 33,295."  ¶ 23.  Granting the relief Plaintiff seeks would not redress its alleged injury.

Apart from the case-or-controversy requirement, standing also demands that Plaintiff falls within the statute's "zone of interests."  *E.g.*, *Nat'l Credit Union Admin. v. 1st Nat'l Bank & Tr. Co.*, 522 U.S. 479, 492 (1998).  The Second Department squarely addressed this issue in *Gizzo v. Town of Mamaronek*, holding that a nonresident of a municipality lacks standing to challenge that municipality's failure to hold a referendum under N.Y.H.R.L. § 23 because nonresidents are not within the statute's zone of interests.  824 N.Y.S.2d 366, 370 (N.Y. App. Div. 2006).  Here, Plaintiff is not a Nassau County resident, ¶ 11, or, for that matter, entitled to vote in *any* election *anywhere*.  Accordingly, Plaintiff lacks standing for Counts 2 and 3.

**B.      The Legislature Properly Amended the County Charter.**

**1.      This Law Did Not Curtail the Legislature's Power.**

By its own terms, L.L.4-2024 did not curtail the Legislature's authority to designate an

21

official newspaper.  Plaintiff claims the law "diminish[ed] the Legislature's power to choose an official newspaper independently and insert[ed] the county executive into the designation process," thereby requiring a referendum under one or the other of two N.Y.H.R.L. provisions and the New York Constitution.  Ex. B at ¶ 2, Cl. 1; ¶ 59, nn.26–27.  But § 2211, as amended, grants the County Executive only the power to "recommend" a newspaper "subject to approval by the County Legislature."  A power to recommend is not a power to bind.  The statute both makes any recommendation contingent on legislative approval and preserves the Legislature's authority and duty to "designate … an official newspaper."  § 2211.  Just as a U.S. magistrate judge's report and recommendation does not curtail or transfer a district judge's power or duty to enter judgment, the County Executive's ability to recommend does not curtail or transfer the Legislature's power or duty to designate the official newspaper.  Finally, given that Plaintiff alleges that *no* newspaper presently meets the previous § 2211's daily circulation requirement, *see* ¶¶ 2, 23, updating that law cannot constitute a curtailment of any legislator's authority.

### 2. Even If This Law Had Curtailed the Legislature's Power, as a Charter Law it is Not Subject to Referendum.

Even if Plaintiff had properly noticed the N.Y.H.R.L. claims and had standing to bring them, and even if Plaintiff were correct that the law limits the Legislature's authority to designate a newspaper, the claims fail on the merits, because no referendum was required.

***No mandatory referendum was required.***  Plaintiff asserts that the Legislature violated N.Y.H.R.L. § 23(2)(f) by not holding a mandatory referendum.  But § 23(2) makes local laws subject to mandatory referendum only "[e]xcept as otherwise provided by or under authority of a state statute."  The Home Rule Law itself is a state statute.  *See generally* Consol. Laws of N.Y. Ch. 36-A.  And "under authority of" that statute (*id.* § 23(2)), county charters are governed by different rules from the one Plaintiff cites.  A local law "amending … a county charter" is not

merely a local law, but a "[c]harter law." *Id.* § 32(2). And as the Second Amended Complaint admits, L.L.4-2024 amends the Nassau County Charter, ¶ 90—thus, it is a charter law.

The N.Y.H.R.L. imposes specific—and different—limits on charter laws. *Id.* § 34. Even if this charter law curtailed the Legislature's power to designate an official newspaper, it was not subject to a mandatory referendum. Section 34(5) provides that, in counties outside New York City, a *charter* law that curtails any power of an elective county officer "shall become effective … at least sixty days after its final enactment," unless the legislature provides otherwise. Within that sixty-day period, if electors equal to at least five percent of the votes cast for governor at the last gubernatorial election file a protest petition, the law "shall become effective … only if approved by the electors" at the next general election held at least sixty days later. *Id.* § 34(5)(c). Absent a protest, the law takes effect sixty days after final enactment. *Id.* § 34(5).

Plaintiff does not allege that five percent of eligible Nassau County voters protested this law. Accordingly, no referendum was required. *Id.* The law was enacted June 24, 2024. SAC ¶ 7. The sixty-day window for requesting a referendum closed August 23, 2024, after which the law "bec[a]me effective." N.Y.H.R.L. § 34(5). The Legislature's December 16 vote occurred under the amended charter, and Plaintiff's claim mandatory-referendum claim fails.

***No permissive referendum was required.*** Plaintiff's claim that the Legislature violated N.Y.H.R.L. § 34(5) and the New York Constitution by failing to notify Nassau County voters that L.L.4-2024 was "subject to a permissive referendum," ¶ 60, also fails. N.Y.H.R.L. § 34(5) imposes no notice requirement; instead, it provides that certain charter laws shall not become effective until 60 days after passage to allow for a referendum. Even if L.L.4-2024 is characterized as a law that "curtails or transfers … [the] power of an elective county officer," it was up to the voters of Nassau County to seek a referendum within the ensuing 60 days unless the Legislature

23

*chose* to provide otherwise.  N.Y.H.R.L. § 34(5).[7]

**VI.     Plaintiff's Open Meetings Law Claim Fails.**

Plaintiff claims the Open Meetings Law required the Legislature to make the proposal to designate the *New York Post* available before its December 16, 2024 meeting and that it failed to do so.  *See* ¶¶ 100–107.  Plaintiff relies on N.Y. Pub. Off. Law § 103(e), which provides that "a proposed resolution … scheduled to be the subject of discussion by a public body during an open meeting shall be made available, *upon request therefor, to the extent practicabl*e at least twenty-four hours prior to the meeting."  Here, there was no request for the proposed resolution, so Plaintiff's claim fails.  Its backdoor attempt to amend the noticed claim should be rejected.  Even if it is not, Plaintiff's new reliance on the website provision of this section also fails.

**A.     Plaintiff Has Not Alleged That the Proposed Resolution Was Required to be Made Available in Advance of the December 16 Meeting.**

Plaintiff alleges no request by it or the public for any "proposed resolution" before the December 16 meeting.  Indeed, Plaintiff does not allege that the resolution was "scheduled to be the subject of discussion" at that meeting.  Accordingly, even under the law Plaintiff cites, the Legislature was not obligated to "ma[ke] available" the resolution, and the claim fails.

**B.     Plaintiff's Website Argument is at War With the Text of the Open Meetings Law.**

Even if properly noticed, Plaintiff's website argument fails.  It relies on the absence of the phrase "upon request therefor" after "shall be posted" in § 103(e) cl. 3.  R.25 at 3.

In clause 1, subsection 103(e) distinguishes "[a]gency records" under the Freedom of Information Law, *see* Pub. Off. Law § 86(4), from "proposed resolution[s]."  *See id.* § 103(e) cl.

---

[7] To the extent Plaintiff contends that § 5 of L.L.4-2024 improperly made the law effective immediately, the Legislature expressly made that provision severable.  R.39-5 at 10 (§ 3).  And it is undisputed that neither Blakeman nor the Legislature undertook any act under L.L.4-2024 or the revised § 2211 until more than sixty days had elapsed from L.L.4-2024's passage.  ¶¶ 53, 61–62.

1.  Clause 3's website-posting provision—on which Plaintiff relies—is limited to "such *records*." *See* N.Y. Pub. Off. Law § 103(e) cl. 3 (emphasis added).  The omission of "proposed resolution[s]" from clauses 2 and 3 limits those clauses' applicability to agency "records."  *See Brennan-Centrella v. Ritz-Craft Corp.*, 942 F.3d 106, 111 (2d Cir. 2019) (presuming that "the legislature follows the principle of … mention of one impliedly excludes others.") (cleaned up).  This inference is reinforced by the proximity of the three clauses and clause 2's reference to the Freedom of Information Law.

To avoid this fatal flaw, Plaintiff must read "such records" to include all materials referenced in clause 1.  But that reading causes a different problem, because doing so logically incorporates those portions of the sentence that *restrict* the definition of "such records" along with those that expand it.  Accordingly, only "such records" as are "scheduled to be the subject of a discussion" and that are the subject of a "request therefor" need be posted on the "agency['s]" website.  Any broader construction would read "upon request therefor" out of the law—after all, if *everything* had to be posted on the agency's website regardless of whether any request was made, the documents would already be "available" and would not need to be "made available[] upon request therefor."  In sum, Plaintiff's new contention fails for the same reason as its original one.

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint should be dismissed.


Dated: January 30, 2026

Respectfully submitted,

/s/ *Todd Cosenza*
Todd G. Cosenza
WILLKIE FARR & GALLAGHER LLP
787 7th Ave
New York, NY 10019

Jeremy M. Bylund (*pro hac vice*)
Joshua N. Mitchell (*pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006

*Counsel for Defendants Nassau County,
Nassau County Legislature, and Bruce
Blakeman*

# CERTIFICATE OF COMPLIANCE

This brief was prepared using Microsoft Word 365.  This paper also complies with this Court's Individual Practice Rules III.C.1 and III.C.2 because the body of the brief does not exceed twenty-five double-spaced pages, using 12-point Times New Roman font for all text.

/s/ *Todd Cosenza*
Todd G. Cosenza