# EXHIBIT C

Page 1

---------------------------------------X

NEWSDAY LLC,

                              Petitioner,

                    -against-

NASSAU COUNTY, NASSAU COUNTY
LEGISLATURE and BRUCE BLAKEMAN,
in his individual capacity,

                              Respondents.

---------------------------------------X


                              One West Street
                              Mineola, New York
                              May 21, 2025
                              10:02 A.M.


          DEPOSITION of NEWSDAY LLC, the Claimant

herein, by JASON NEKNEZ, taken by the Respondents,

pursuant to Rule 50-h and Notice, held at the above-

mentioned time and place before Courtney Biondo, a

Notary Public of the State of New York.

Page 2

APPEARANCES:

BALLARD SPAHR, LLP
     Attorneys for Petitioner
        1675 Broadway, 19th Floor
        New York, New York  10019

        BY:  LYNN B. OBERLANDER, ESQ.
             SAUMYA VAISHAMPAYAN, ESQ.

WILLKIE FARR & GALLAGHER, LLP
        Attorneys for Respondents
        1875 K Street, NW
        Washington, D.C.  20006-1238
        BY:  JEREMY M. BYLUND, ESQ.
             SEAN SANDOLOSKI, ESQ.
             File No. 135615-00001

ALSO   PRESENT:

     DINA SFORZA, ESQ.
     General Counsel
     Newsday Media Group

     ARTHUR T. WALSH
     Chief Deputy County Executive
     Nassau County Office of the County Executive

                    *    *    *

Page 10

Jason Neknez

department as quality assurance representative.

From there, I was promoted a year or two later to head traffic coordinator.

Q     Okay.

A     Then --

Q     What does a traffic coordinator do?

A     Traffic coordinator makes sure that all of the advertising is moving around the building properly.

Q     Okay.

A     And has got all of the, you know, right parameters it needs to make sure everything is set before it publishes.

Q     Okay.  And what years were you in that role?

A     I was in that role from '99 to 2001 approximately.

Q     And what did you do after that?

A     From there, I was promoted to advertising systems supervisor.  I held that role for several years.

Then, from there, I became -- I was promoted again to advertising systems manager.

Q     What did you do in that role?

Page 11

Jason Neknez

A        Systems manager, we installed and maintained advertising order entry and booking systems between the advertising department and ultimately publishing, print ads in the paper.

Q        Okay.  And what was your next role?

A        From there -- I stayed in that role, but I took on the responsibility of the call center and the legal advertising team and the obituary team.

Q        Okay.

A        I held that until 2014.  In 2014, I was promoted to director of advertising.  I then held that until current.

In 2019, I took on -- I have the same title, but took additional responsibilities of the local retail advertising department.  So same -- that was added into my title, but I had the retail advertising team, as well.

Q        So does your role cover all of advertising now?

A        It covers all of local retail advertising and local classified advertising.

Q        So what kind of advertising would it not cover?

Page 12

Jason Neknez

A        Strategic major accounts, national accounts.  Things like that would be handled by another team.

Q        So in your current position and your prior position, what was your involvement with Nassau County and their advertising in the paper?

A        Any time the county would reach out, we would help them with their publishing needs for legal notices.

Q        So when did you first interact with Newsday as a employee of Newsday?

MR. BYLUND:  I'm sorry.  Let me rephrase.

Q        When did you first interact with Nassau County in the advertising space in your role at Newsday?

A        Approximately 2009.

Q        From 2009 until present, you have been interacting with Nassau County in advertising?

A        Correct.

Q        What specific projects can you recall that you worked on with Nassau County?

A        I wouldn't classify them as projects. They would submit advertising needs for different

Page 74

Jason Neknez

A        Yes.

Q        Who is doing the recommending?

A        The county executive.

Q        Okay.  Do you see the words subject to approval?

A        Yes.

Q        And who is doing that approval?

A        The County Legislature.

Q        Do you see, in the second sentence, that they shall, quote, designate in writing a newspaper published to be an initial newspaper of the county?

            MR. BYLUND:  Excuse me.  Let me rephrase.

Q        Designate in writing a newspaper published daily to be an official newspaper of the county?

A        Yes.

Q        Whose responsibility is that?

A        The County Legislature.

Q        Okay.  Do you see anything in this paragraph that changes that written designation?

A        I do not.

Q        Do you know what the basis of

Page 75

Jason Neknez

Newsday's claim is then that the legislature's power has been curtailed?

A    I do not.

Q    But you are the representative of Newsday at this hearing?

A    Yes.

Q    If we go back to Exhibit 1, can you read Claim 2 for the record?

A    Upon information and belief, the Nassau County Legislature intentionally kept a proposed resolution to remove Newsday as Nassau County's official newspaper off of the public agenda of the December 16, 2024 meeting and chose not to make the text of the proposed resolution public in advance of that meeting.

Any proposed resolution set to be discussed at an open meeting of a public body shall be made available before the meeting.  New York Pub Official Law Section 103(e).

Upon information and belief, the Nassau County Legislature made these decisions to avoid public scrutiny of the proposed resolution. As a result, Newsday was unaware that the Nassau County Legislature was set to debate Newsday's

Page 76

Jason Neknez

official newspaper designation.

The Nassau County Legislature's passage of resolution number 12-24 on December 16, 2024, purportedly making the New York Post the official county newspaper, violates the New York Public Officers Law 103(e).

Q       So you see that reference to New York Public Officers Law Section 103(e)?

A       Yes.

MR. BYLUND:  I would like to refer your attention to Tab 7, which is Exhibit 7.

(New York Public Officers Law Section 103(e) was received and marked Respondents' Exhibit 7 for identification at this time.)

MR. BYLUND:  I'm placing before the witness Section 103, Open Meetings and Executive Sessions.

Q       Do you see that law in front of you?

A       I do.

Q       Can you look down at the subsection (e), which is on the next page?

A       Yes.

Page 77

Jason Neknez

Q    Can you read the first sentence of subsection (e) for the record.

A    Agency records available to the public pursuant to Article Six of this chapter, as well as any proposed resolution, law, rule, regulation, policy, or any amendment thereto, that is scheduled to be the subject of discussion by a public body during an open meeting shall be made available upon request therefor to the extent practicable at least twenty-four hours prior to the meeting during which the records will be discussed.

Q    Can you see the language, Upon request thereof?  It is the third line down.

A    Yes.

Q    Did Newsday request the resolution be made available in advance of this hearing?

A    I am not sure.

Q    Let me be more specific.

In advance of the December 2024 legislative hearing where the amendment was taken up, do you know if Newsday made a request for that amendment to be --

MR. BYLUND:  Excuse me.  Strike that.

Page 78

Jason Neknez

Q        In advance of the December 2024 hearing, where the designation resolution was taken up, do you know if Newsday requested that that resolution be made public in advance of that hearing?

A        I'm not aware of that.

Q        Are you aware of any party making such a request?

A        I am not.

Q        If Newsday made no such request and you are unaware of anyone making such request, what is the bases of your claim that this section was violated?

A        I am not sure how to answer that.  To my knowledge, I don't know if we made or didn't make a claim.  I am just unaware if it happened or not.

Q        So you don't know --

A        I don't.

Q        -- sitting here today?

A        I don't.

Q        Can you also look back at subsection (e)?  Do you see where it says, A resolution scheduled to be the subject of discussion?  It is in the second line, halfway through the second line.

Page 79

Jason Neknez

A          I'm sorry.  Say that one more time.

Q          Sure.  In the second line that says, That is scheduled to be the subject of discussion --

A          Yes.

Q          -- do you know if the designation resolution was scheduled in advance to be heard on that December 2024 meeting?

A          I do not know.

Q          -- can we go back to Exhibit 2?

Can you read paragraph 25 for the record, please?

A          As an example of a governmental notice before the Legislature can pass a Local Law, the County Charter requests it to publish a notice in an official newspaper specifying the title of that Local Law and the time and place of the public hearing on it.

Q          Do you know if that was published, the notice was published?

A          I don't recall seeing it published.

Q          Do you know if it was published?

A          I do not.

Q          So in the years that Newsday was designated as the official newspaper of record, do

Page 80

Jason Neknez

you know if the legislature published those resolutions in advance?

A        In advance of the meeting?

Q        In advance of the hearing.

A        In advance of the hearing?

My job is to receive the requests from the county and make sure that they publish.  I wasn't following closely the county business to see what was published when.

Q        I am asking a different question.

You are unaware -- in previous years when Newsday was designated, you are unaware if the legislature published a resolution twenty-four hours in advance of the hearing, correct?

A        Correct.  I'm not sure.

Q        Can we go back to Exhibit 1 and go to item number four?

Can you read item number four for the record?

A        The items of damage or injuries claimed are:  Newsday was injured when the Nassau County Legislature purported to remove it as Nassau County's official newspaper in Resolution 12-24, passed pursuant to the provisions of Local Law

Page 81

Jason Neknez

4-2024, which lacked any legal force or effect at the time of Nassau County Legislature meeting.

Q    So specifically what amount of damages is Newsday seeking?

A    In terms of lost advertising revenue, we average upward of $250,000 a year in lost revenue.

Q    Are you aware that the draft Complaint alleges 200,000?

A    I am not.

Q    But you are testifying that 250,000 is the real number, not 200,000?

A    Correct.

Q    So in 2023 -- well, so you are saying that the draft Complaint is inaccurate when it says approximately $200,000 in published notices in Newsday in both 2023 and 2024.  Is that correct?

A    Would you like me to review it?

Q    Yes.  If you go to page nine -- so Exhibit 2, page nine, paragraph 31.  Will you read that paragraph for the record?

A    As the result of the official newspaper designation, the county has paid Newsday hundreds of thousands of taxpayer dollars over the

Page 82

Jason Neknez

years to publish such notices.  Upon information and belief, the county spent approximately $200,000 to publish such notices in Newsday in both 2023 and 2024.

Q      So is that inaccurate?

A      I am reading this $200,000 over the span of 2023 and 2024.  I would say that's inaccurate.

Q      I'm sorry?

A      I would say that's inaccurate.

Q      So, to your memory.  How much was it in 2024 that Nassau County spent in Newsday?

A      Approximately 250,000.

Q      What was the amount spent in 2023?

A      Similar.

Q      Do you have knowledge of what that amount was going back in time say to 2022?

A      Yes.

Q      What was that amount in 2022?

A      2022 was also similar.

Q      How about 2021?

A      2021, I believe it was higher.

Q      Do you know how much higher?

A      Not from memory.

Page 115

Jason Neknez

CERTIFICATION


I, Courtney Biondo, a Notary Public in and for the State of New York, do hereby certify:

THAT the witness whose testimony is hereinbefore set forth, was duly sworn by me; and

THAT the within transcript is a true record of the testimony given by said witness.

I further certify that I am not related to any of the parties to this action either by blood or marriage; and

THAT I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 21st day of May, 2025.


*Courtney Biondo*

COURTNEY BIONDO