**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Newsday LLC,<br>Plaintiff,<br><br>-against-<br><br>Nassau County, Nassau County Legislature, and Bruce Blakeman, in his individual capacity,<br>Defendants. | No. 2:25-cv-01297-DG-ARL |

**PLAINTIFF NEWSDAY LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

BALLARD SPAHR LLP

Lynn B. Oberlander
oberlanderl@ballardspahr.com
Saumya K. Vaishampayan
vaishampayans@ballardspahr.com
1675 Broadway, 19th Floor
New York, NY 10019
Tel: 212-223-0200
Fax: 212-223-1942

*Attorneys for Plaintiff Newsday LLC*

Served: March 2, 2026

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 2

ARGUMENT .......... 5

I. Defendants Engaged in Unconstitutional Retaliation for Newsday's Protected Speech and Are Not Immune From Suit .......... 5

a. Newsday Plausibly Alleges a Section 1983 Claim for First Amendment Retaliation .......... 5

i. Newsday Satisfies the Government Employee Test for Retaliation .......... 6

ii. *Monell* Does Not Bar Newsday's Claim Against the County .......... 10

iii. The Designation of an Official Newspaper Is Not Government Speech .......... 11

b. Defendants Are Not Immune From Suit .......... 12

i. The Legislature Cannot Invoke Legislative Immunity .......... 13

ii. Legislative Immunity Does Not Shield Blakeman .......... 14

iii. Qualified Immunity Does Not Shield Blakeman .......... 16

1. Newsday Has Plausibly Alleged a Violation of its Rights .......... 17

2. The Right at Issue Was Clearly Established .......... 17

iv. The Legislature Cannot Invoke Qualified Immunity .......... 19

II. The Legislature Violated State Law in its Rush to Penalize Newsday .......... 19

a. This Court May Exercise Supplemental Jurisdiction .......... 19

b. Newsday Complied with New York's Notice Requirements .......... 20

c. Newsday Plausibly Alleges its Home Rule Law Claims .......... 21

1. Local Law 4-2024 Required A Referendum Because It Curtailed Elective Officers' Power .......... 21

2. Newsday Has Article III Standing ....................23

d. Newsday Plausibly Alleges an Open Meetings Law Claim ....................25

CONCLUSION ....................25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aguilera v. Cnty. of Nassau*,
425 F. Supp. 2d 320 (E.D.N.Y. 2006) ....21

*Almonte v. City of Long Beach*,
478 F.3d 100 (2d Cir. 2007)....16

*Alouette Fashions v. Consol. Edison Co. of N.Y.*,
119 A.D.2d 481 (1st Dep't 1986) ....20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....5

*Bacon v. Phelps*,
961 F.3d 533 (2d Cir. 2020)....16, 17, 19

*Ballard v. N.Y. Safety Track*,
126 A.D.3d 1073 (3d Dep't 2015)....25

*Bd. of Cnty. Comm'rs v. Umbehr*,
518 U.S. 668 (1996).... *passim*

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....5

*Bogan v. Scott-Harris*,
523 U.S. 44 (1998)....15

*Church of Scientology of Cal. v. United States*,
506 U.S. 9 (1992)....23

*Colon v. Martin*,
35 N.Y.3d 75 (2020) ....20

*Connick v. Myers*,
461 U.S. 138 (1983)....7

*Csorny v. Shoreham-Wading River Cent. Sch. Dist.*,
305 A.D.2d 83 (2d Dep't 2003) ....25

*Dean v. Town of Hempstead*,
527 F. Supp. 3d 347 (E.D.N.Y. 2021) ....13

*Decker Advert. v. Delaware Cnty.*,
765 F. Supp. 3d 128 (N.D.N.Y. 2025) .... *passim*

*Dobosz v. Walsh*,
892 F.2d 1135 (2d Cir. 1989)....................18

*Drayton v. Mayor & Council of Rockville*,
699 F. Supp. 1155 (D. Md. 1988)....................16

*Edrei v. Maguire*,
892 F.3d 525 (2d Cir. 2018)....................16

*El Dia v. Governor Rossello*,
165 F.3d 106 (1st Cir. 1999)....................18

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)....................23

*Fisher v. Kanas*,
487 F. Supp. 2d 270 (E.D.N.Y. 2007)....................15

*Giambalvo v. Suffolk Cnty.*,
155 F.4th 163 (2d Cir. 2025)....................18

*Gizzo v. Town of Mamaroneck*,
36 A.D.3d 162 (2d Dep't 2006)....................24

*Goldberg v. Town of Rocky Hill*,
973 F.2d 70 (2d Cir. 1992)....................13

*Grasson v. Bd. of Educ.*,
2010 WL 1444570 (D. Conn. Apr. 12, 2010)....................15

*Gronowski v. Spencer*,
424 F.3d 285 (2d Cir. 2005)....................10, 11

*Gurrieri v. Cnty. of Nassau*,
2018 WL 6590564 (E.D.N.Y. Dec. 14, 2018)....................21

*Harman v. City of N.Y.*,
140 F.3d 111 (2d Cir. 1998)....................7

*Henneberger v. Cnty. of Nassau*,
465 F. Supp. 2d 176 (E.D.N.Y. 2006)....................11

*Kelly v. Huntington Union Free Sch. Dist.*,
675 F. Supp. 2d 283 (E.D.N.Y. 2009)....................8

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*,
507 U.S. 163 (1993)....................13

*Matal v. Tam*,
582 U.S. 218 (2017)........................................................................................11, 12

*Mayor of City of N.Y. v. Council of City of N.Y.*,
9 N.Y.3d 23 (2007) ..........................................................................................22

*In re Merrill Lynch Ltd. P'ships Litig.*,
154 F.3d 56 (2d Cir. 1998)................................................................................20

*Monell v. Dep't of Soc. Servs. of City of N.Y.*,
436 U.S. 658 (1978)........................................................................................10, 11

*Morin v. Foster*,
61 A.D.2d 1130 (4th Dep't 1978) .......................................................................22

*N. Miss. Commc'ns v. Jones*,
792 F.2d 1330 (5th Cir. 1986) ...........................................................................18

*Nat'l Credit Union Admin. v. First Nat'l Bank & Tr.*,
522 U.S. 479 (1998)..........................................................................................23

*Nat'l Rifle Ass'n of Am. v. Vullo*,
144 F.4th 376 (2d Cir. 2025) ..........................................................................10, 17, 18

*Nowak v. Ironworkers Loc. 6 Pension Fund*,
81 F.3d 1182 (2d Cir. 1996)..........................................................................19, 20

*O'Hare Truck Serv. v. City of Northlake*,
518 U.S. 712 (1996)..........................................................................................17

*Orange v. Cnty. of Suffolk*,
830 F. Supp. 701 (E.D.N.Y.) ............................................................................16

*Patterson v. Cnty. of Oneida*,
375 F.3d 206 (2d Cir. 2004)................................................................................8

*Perry v. Sindermann*,
408 U.S. 593 (1972)..................................................................................1, 7, 16, 17

*Phila. Indem. Ins. v. Indian Harbor Ins.*,
434 F. Supp. 3d 4 (E.D.N.Y. 2020) ...................................................................24

*Phillips v. Bowen*,
278 F.3d 103 (2d Cir. 2002)................................................................................7

*Press & J. v. Borough of Middletown*,
358 F. Supp. 3d 411 (M.D. Pa. 2018).................................................................9

*Rockland Vending v. Creen*,
2009 WL 2407658 (S.D.N.Y. Aug. 4, 2009) ..................................................................7

*Sacerdote v. NYU*,
9 F.4th 95 (2d Cir. 2021) ..................................................................5

*Scott v. City of N.Y.*,
40 A.D.3d 408 (1st Dep't 2007) ..................................................................20, 21

*Shurtleff v. City of Bos.*,
596 U.S. 243 (2022)..................................................................11, 12

*Specht v. City of N.Y.*,
15 F.4th 594 (2d Cir. 2021) ..................................................................6, 8

*Stajic v. City of N.Y.*,
214 F. Supp. 3d 230 (S.D.N.Y. 2016)..................................................................8, 10

*State Emps. Bargaining Agent Coal. v. Rowland*,
494 F.3d 71 (2d Cir. 2007)..................................................................13, 14, 15

*Supreme Ct. of Va. v. Consumers Union of U.S.*,
446 U.S. 719 (1980)..................................................................13, 14

*Terebesi v. Torreso*,
764 F.3d 217 (2d Cir. 2014)..................................................................18

*Triolo v. Nassau Cnty.*,
24 F.4th 98 (2d Cir. 2022) ..................................................................19

*United States v. Adams*,
2025 WL 1226635 (S.D.N.Y. Apr. 25, 2025)..................................................................24

*United States v. Aref*,
533 F.3d 72 (2d Cir. 2008)..................................................................24

*Uzuegbunam v. Preczewski*,
592 U.S. 279 (2021)..................................................................23

*Vega v. Semple*,
963 F.3d 259 (2d Cir. 2020)..................................................................19

*Vincent v. Yelich*,
718 F.3d 157 (2d Cir. 2013)..................................................................18

*Walker v. Schult*,
717 F.3d 119 (2d Cir. 2013)..................................................................16

*Williams v. Town of Greenburgh*,
535 F.3d 71 (2d Cir. 2008)....................6

*Ying Li v. City of N.Y.*,
246 F. Supp. 3d 578 (E.D.N.Y. 2017)....................10

**Statutes**

N.Y. County Law § 214....................14, 22

N.Y. Gen. Mun. Law § 50-h....................20

N.Y. Mun. Home Rule Law § 23....................19, 24

N.Y. Mun. Home Rule Law § 34....................19, 24

N.Y. Pub. Off. Law § 100....................25

N.Y. Pub. Off. Law § 103....................19, 25

**Other Authorities**

N.Y. Const. art. IX, § 1....................19

U.S. Const. amend. I.................... *passim*

Plaintiff Newsday LLC respectfully submits this opposition to the motion to dismiss the Second Amended Complaint filed by Defendants Nassau County (the "County"), Nassau County Legislature (the "Legislature"), and Bruce Blakeman, in his individual capacity ("Blakeman," and together with the County and the Legislature, "Defendants").

## PRELIMINARY STATEMENT

Newsday, as everyone knows, is Long Island's paper. And for many years, it has been the County's official newspaper—chosen by both Republican and Democratic legislators to publish the County's legal notices. But County Executive Bruce Blakeman, unhappy with the way Newsday was covering his administration, set out on a campaign to punish it, culminating in stripping Newsday of its official newspaper designation and cutting off the revenues that flow therefrom.

This retaliatory campaign violated the First Amendment. The Legislature also violated state law, amending the Nassau County Charter (the "County Charter") to remove the ability of the minority party—here Democrats—to choose its own official newspaper, without providing for a referendum by voters, as required. The Legislature also violated the Open Meetings Law by removing Newsday as the official newspaper at a meeting without prior notice.

Newsday does not have a "right" to be the County's official newspaper. *See* Mem. of Law in Supp. of Defs.' Mot. Dismiss ("Mem.") at 2. But it does have a right not to be ousted from that position for its speech. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) ("[T]he government . . . may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech."). As that is precisely what Defendants have done, and as Newsday plausibly states each of its claims, this Court should deny Defendants' motion to dismiss in full.

## STATEMENT OF FACTS

Newsday is the largest news organization regularly reporting on Nassau County, employing some 100 reporters to do so, and has long been considered the paper of record for the County. Second Am. Compl. ("SAC") ¶¶ 2, 20-21. The County is a municipal corporation located on Long Island in the State of New York. *Id.* ¶ 12. The Legislature is the local government body responsible for making laws and policies that impact the County. *Id.* ¶ 13. Blakeman, a Republican, has been the County Executive since 2022. *Id.* ¶ 14.

As a matter of state law and pursuant to the County Charter, the Legislature each year selects newspapers to be the County's "official newspapers," which are the legally designated fora for the placement of various governmental notices that must be published by law. *Id.* ¶ 25. The purpose of publishing governmental notices in official newspapers is to increase government transparency by reaching as many members of the public as possible. *Id.* ¶ 27.

Until 2024, the County Charter provided that the Legislature's two most popular political parties each could designate an official newspaper. *Id.* ¶¶ 29, 30 & n.6. As no other news organization matches Newsday's coverage of Nassau County, members of both parties have each designated Newsday as the County's official newspaper. *See id.* ¶¶ 22-24, 28, 30 & n.6, 31. The County paid Newsday to publish notices pursuant to its official newspaper designation, amounting to approximately $200,000 in both 2023 and 2024. *See id.* ¶ 32.

In 2024, a major political story covered by Newsday was Blakeman's efforts to prevent transgender women and girls from competing on teams with cisgender women and girls at County facilities. *See id.* ¶¶ 3, 35. Newsday covered this story extensively through news articles and editorials. *See id.* ¶¶ 35-36.

Fueled by its displeasure with Newsday's coverage of this and other issues, the Blakeman administration engaged in a multipronged effort to punish Newsday and deprive its readers of access to public information. *Id.* ¶ 38. Since March 2024, Blakeman, his spokesman Christopher Boyle, and the Blakeman administration have collectively ignored dozens of Newsday's requests for comment or information. *Id.* ¶¶ 38-47. Boyle admitted to a Newsday reporter that this was a deliberate strategy, saying that "we are just in a little bit of a holy war against newsday [sic] at the moment." *Id.* ¶¶ 42-43; *see also id.* ¶ 47 (Boyle touting his power to withhold comments and information).

Blakeman and his administration also penalized Newsday by removing all but one Newsday employee from its distribution list for press releases, pressuring at least one advertising agency to cancel scheduled advertisements for Nassau Parks, and enlisting the Legislature in their scheme to oust Newsday from its longstanding position as the County's official newspaper. *See id.* ¶¶ 48-56.[1] These actions hurt Newsday financially. *See id.* ¶¶ 32, 50, 76.

As part of its "holy war," on June 24, 2024, Blakeman's administration introduced a proposal to amend Section 2211 of the County Charter that would, for the first time, give Blakeman and future county executives an influential role in the newspaper designation process. *See id.* ¶¶ 53-54. The amendment also transferred the power to designate official newspapers from legislators representing the two most popular political parties to the Legislature as a whole. *Compare id.* ¶ 29 *with id.* ¶ 57. In other words, it stripped the Legislature's minority party of its authority to designate an official paper. *See id.* ¶ 58. After limited discussion, the Legislature passed the proposal by a party line vote and designated it Local Law 4-2024. *Id.* ¶ 56.

[1] After Newsday commenced this action, Defendants backtracked on some of these actions. *See id.* ¶¶ 49, 51.

Acting pursuant to Local Law 4-2024, on December 9, 2024, Blakeman formally recommended that the Legislature designate the New York Post as the official newspaper of the County. *Id.* ¶ 61. But the Legislature neither included the official newspaper designation vote on its published agenda for its December 16, 2024 session nor made public the text of the proposed resolution in advance of the meeting. *Id.* ¶ 63. During discussion of the newspaper designation, Republican Legislator Howard J. Kopel specifically cited Newsday's editorial viewpoints as grounds for removing official county notices from it. *Id.* ¶ 66. The resolution passed along party lines. *Id.* ¶ 68. After the designation, Blakeman celebrated the removal of Newsday's designation and openly admitted that Newsday's coverage prompted the switch. *See id.* ¶¶ 69-73. This suit followed.

On March 6, 2025, Newsday filed its initial complaint in this matter asserting a First Amendment retaliation claim against Defendants, noting that it would promptly amend to add two state law claims after complying with a state administrative inquiry. *See* Dkt. 1 ¶ 73 & n.39. On May 21, 2025, a representative for Newsday appeared for examination about Newsday's state law claims. SAC ¶ 79. Newsday then filed an amended complaint to add claims against the Legislature under New York's Municipal Home Rule Law ("HRL") and Open Meetings Law. *See* Dkt. 22. On June 13, 2025, in a pre-motion letter, Defendants argued that Newsday sued under a section of the HRL that does not control amendments to the County Charter. *See* Dkt. 24. After Defendants opposed Newsday's oral motion for leave to file the SAC to address this point, *see* Dkt. 35 at 19:24-20:1, the parties submitted letter briefing, and on November 7, 2025, Magistrate Judge Lindsay granted Newsday's motion. Dkt. 38. Defendants then brought a Rule 72 Objection to the Magistrate Judge's decision, Dkt. 41, and following additional briefing, this Court affirmed Judge Lindsay's order on December 19, 2025. *See* Dkts. 43, Order (12/19/2025).

Defendants also moved to stay discovery, and Magistrate Judge Lindsay denied that motion but limited discovery to document discovery until this Court decides Defendants' motion to dismiss. *See* Dkt. 36.

**ARGUMENT**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In assessing the complaint, [the court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. NYU*, 9 F.4th 95, 106-07 (2d Cir. 2021). Defendants raise a plethora of arguments as to why this case should not move forward, but none of them are convincing. As the SAC plausibly alleges that Newsday was illegally penalized for its speech, and that the Legislature's attempt to change the law governing the official newspaper designation and its subsequent newspaper designation were fatally flawed, dismissal is inappropriate.

**I. Defendants Engaged in Unconstitutional Retaliation for Newsday's Protected Speech and Are Not Immune From Suit**

Newsday has clearly alleged that Defendants engaged in a retaliatory campaign to punish Newsday for its protected speech. Unable to dispute this, Defendants try to argue that their actions are constitutional, and, in any event, that Blakeman and the Legislature are immune from suit. These attacks are meritless. There is no basis for this Court to dismiss Newsday's Section 1983 claim.

**a. Newsday Plausibly Alleges a Section 1983 Claim for First Amendment Retaliation**

Newsday states a claim for First Amendment retaliation under the test for government employees, which is the proper test for plaintiffs, like Newsday, who have commercial

relationships with the government. Defendants attempt to avoid this outcome by asserting that Newsday's speech was not chilled, *Monell* bars the claim against the County, and government speech provides a defense for their actions. Their arguments all fail.

**i. Newsday Satisfies the Government Employee Test for Retaliation**

The elements of a *prima facie* First Amendment retaliation claim under Section 1983 vary "depending on the factual context." *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008). Where a plaintiff challenges "the termination of a pre-existing commercial relationship with the government," it is an independent contractor, and the appropriate test is the one used for government employees. *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 684-85 (1996); *see Decker Advert. v. Delaware Cnty.*, 765 F. Supp. 3d 128, 142 (N.D.N.Y. 2025) (collecting cases and applying the test to a plaintiff newspaper challenging its removal as official newspaper). Here, Newsday is an independent contractor because of its longstanding commercial relationship with the County as the official newspaper. *See* SAC ¶¶ 28, 30-31 & n.6. Accordingly, Newsday plausibly states a claim if it alleges that (1) it engaged in protected speech by commenting "as a citizen on a matter of public concern," (2) it "suffered an adverse employment action," and (3) "a causal connection existed between the adverse action and the protected activity." *Specht v. City of N.Y.*, 15 F.4th 594, 600 (2d Cir. 2021). It satisfies each element here.

The first element seeks to separate speech as a citizen from speech "pursuant to [a contractor's] employment responsibilities." *Id.* As Newsday's only employment responsibilities as the official newspaper in 2024 involved publishing the County's legal notices, its news coverage and editorials reflect Newsday's speech as a citizen. *See Decker*, 765 F. Supp. 3d at 142 n.4. And that speech addressed a matter of public concern, *see* SAC ¶¶ 35-36, as it

"relat[ed] to any matter of political, social, or other concern to the community," *Connick v. Myers*, 461 U.S. 138, 146 (1983); *see Harman v. City of N.Y.*, 140 F.3d 111, 118 (2d Cir. 1998) ("[D]iscussion regarding current government policies and activities is perhaps the paradigmatic matter of public concern." (cleaned up)); *see also* Mem. at 14 ("[T]here is no dispute that Plaintiff has a protected interest in publishing newsworthy content.").

Under the second element, government decisions not to renew a contract or to terminate a relationship with a contractor both constitute adverse employment actions. *See Perry*, 408 U.S. at 598 (allegations that a state college's "decision not to renew" a teacher's contract based on his speech "[p]lainly . . . present a bona fide constitutional claim"); *Umbehr*, 518 U.S. at 686 ("we recognize the right of independent government contractors not to be terminated for exercising their First Amendment rights"); *Rockland Vending v. Creen*, 2009 WL 2407658, at *13 (S.D.N.Y. Aug. 4, 2009) (addressing both). Where a county "effectively discharged" its official newspaper "from its role," resulting in an end of the "official relationship" between the parties, a newspaper sufficiently alleges an adverse employment action. *Decker*, 765 F. Supp. 3d at 145 (collecting cases). Newsday plausibly alleges Defendants did the same here. *See* SAC ¶¶ 61-68.

Additionally, the Second Circuit "allows a combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass." *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002); *see Decker*, 765 F. Supp. 3d at 145 (same). Defendants ignored dozens of requests for comment or information, removed all but one Newsday employee from its distribution list, discouraged an advertising agency from placing advertisements for Nassau Parks in Newsday, and schemed to amend the Charter to give Blakeman a role in the official newspaper designation process, *see* SAC ¶¶ 34-60—a series of

"seemingly minor incidents" that reached a "critical mass," *Phillips*, 278 F.3d at 109. Accordingly, Newsday has plausibly alleged an adverse employment action.

Third, a causal connection between the adverse action and protected speech exists if the plaintiff alleges that the speech "was a substantial motivating factor in the adverse employment action." *Specht*, 15 F.4th at 604-05. A plaintiff can do so in one of two ways: (1) indirectly, by alleging the protected speech was followed by the adverse action, or (2) directly by alleging "evidence of retaliatory animus." *Kelly v. Huntington Union Free Sch. Dist.*, 675 F. Supp. 2d 283, 297 (E.D.N.Y. 2009). "Direct evidence of retaliatory animus may take the form of 'conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged retaliatory attitude.'" *Decker*, 765 F. Supp. 3d at 146 (quoting *Stajic v. City of N.Y.*, 214 F. Supp. 3d 230, 235 (S.D.N.Y. 2016)). Here, plaintiff alleges both indirect and direct causation. The adverse actions described above followed Newsday's protected speech about the Blakeman administration, providing indirect evidence. SAC ¶¶ 35-68. Blakeman and the presiding officer of the Legislature Howard J. Kopel both stated that Newsday's speech was the reason for the switch in official newspaper. *See, e.g., id.* ¶¶ 66, 70-71. Additionally, Blakeman's spokesperson similarly stated that Newsday's coverage caused the administration to stop communicating with Newsday reporters. *See id.* ¶¶ 41-43; *see also id.* 47 (asking, "Do you think things like this make us more or less likely to talk to the [editorial] board?"). This is direct evidence of a causal connection.[2]

[2] As defendants appear to concede, a claim is also properly stated against Blakeman in his individual capacity because the SAC is replete with examples of his knowing, direct, and personal participation in the First Amendment retaliation—a "holy war" to harm Newsday. *See generally* SAC ¶¶ 34-52, 61, 69-71. Individuals sued in their personal capacity are only properly dismissed where there is no evidence to show that they had any involvement in the harassing incidents at issue. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004).

Defendants' strained argument that the government employee test does not apply because Newsday was not an independent contractor in 2025 is both factually and legally wrong. *See* Mem. at 17. The retaliation, including the decision to de-designate Newsday, happened in 2024 while it was, in fact, the official newspaper. *See* SAC ¶¶ 34-52, 61-68. In any event, courts apply the government employee test to nonrenewal and termination decisions based on protected speech. *See Umbehr*, 518 U.S. at 685-86; *Decker*, 765 F. Supp. 3d at 142, 148-49 (applying government employee test for a de-designation decision); *Press & J. v. Borough of Middletown*, 358 F. Supp. 3d 411, 417 (M.D. Pa. 2018) ("The crux of the holding in *Umbehr* was that the independent contractor's annual trash-hauling agreement—its preexisting commercial relationship of six years—*could not be ended (by nonrenewal)* for unconstitutional reasons." (emphasis added)).

Defendants' other arguments are similarly unpersuasive. They argue that Newsday's speech was not chilled, Mem. at 15-16, but that is not necessary for the government employee test for First Amendment retaliation, which applies here. Their assertion that a Newsday employee's "withholding" of information "was the reason [Newsday] failed to receive" emails from the County's press distribution list*, see id.* at 16, is irrelevant and impossible to square with Newsday's plausible allegations, *see* SAC at ¶¶ 5, 48.

Defendants next attack the causal connection between Newsday's coverage and their decision to designate the New York Post as the official newspaper, Mem. at 14-15, but they ignore allegations in which Blakeman and Kopel *admitted* that Newsday's speech was the reason for the switch. *See* SAC ¶¶ 66, 70-71. Defendants also argue that no causal connection exists with respect to Blakeman because the Legislature was not bound to accept his official newspaper recommendation. *See* Mem. at 16. This argument betrays their misunderstanding about

Newsday's burden at the pleading stage. *See Stajic*, 214 F. Supp. 3d at 235-36 (allegations that "could support a reasonable finding of a causal connection" suffice on motion to dismiss).

Finally, Defendants' argument that they would have reached the same decision about the official newspaper designation without Newsday's exercise of its protected speech, Mem. at 15, is inappropriate at the pleadings stage. *See Nat'l Rifle Ass'n of Am. v. Vullo*, 144 F.4th 376, 387-88 & n.2 (2d Cir. 2025) (noting that such "defenses are best resolved at the summary judgment stage."), *cert. denied*, No. 25-479, 2026 WL 490650 (Feb. 23, 2026).

**ii. *Monell* Does Not Bar Newsday's Claim Against the County**

A municipality like Nassau County is liable under Section 1983 if its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprived the plaintiff of its rights. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Municipal liability is proper when a "policymaker takes action that violates an individual's constitutional rights" and "[e]ven one episode of illegal retaliation" may suffice "if ordered by a person whose edicts or acts represent official [municipal] policy." *Gronowski v. Spencer*, 424 F.3d 285, 296 (2d Cir. 2005); *see Ying Li v. City of N.Y.*, 246 F. Supp. 3d 578, 636 (E.D.N.Y. 2017) ("[A] policy or custom may be established by . . . actions or decisions made by municipal officials with decision-making authority . . . .").

Here, plausible allegations show that Blakeman, the County Executive, orchestrated a governmental policy or custom of violating Newsday's First Amendment rights and that lower-level employees executed the policy or custom. Blakeman retaliated against it for its exercise of protected speech by (1) ignoring its requests for comment and information, (2) removing its reporters from the press release distribution list, (3) discouraging others from placing ads in Newsday, (4) driving a charter amendment that would enable him to influence the choice of the

official newspaper, and (5) recommending that the Legislature designate the New York Post as the County's official newspaper instead of Newsday. *See* SAC ¶ ¶ 34-58, 61. Blakeman's spokesperson Boyle told a Newsday reporter that the administration is in a "holy war against [N]ewsday" and "[w]e haven't been commenting on anything . . . [a]s difficult as that makes my job." SAC ¶¶ 42-43. Finally, Blakeman admitted that Newsday's speech prompted his retaliation, including the change in official newspaper, *see* SAC ¶¶ 69-71. These allegations are simply not "bare assertion[s] or a "[t]hreadbare recital[] of the elements," as Defendants claim. Mem. at 17.

Drawing all favorable inferences in Newsday's favor, as this Court must, Newsday has plausibly alleged that Blakeman set the administration's policy of violating its First Amendment rights, in part by not commenting to Newsday and engaging in a "holy war" against Newsday. Blakeman also surely has final authority over matters like setting his administration's communications policy and recommending an official newspaper to the Legislature, *see* SAC ¶ 61, and so his "actions undoubtedly represent government policy." *Gronowski*, 424 F.3d at 296. This plainly states a claim against the County under *Monell*. *See Henneberger v. Cnty. of Nassau*, 465 F. Supp. 2d 176, 197 (E.D.N.Y. 2006) (allegations that the Nassau County Executive and another high-ranking official deprived the plaintiffs of their rights sufficed to establish *Monell* liability at the motion-to-dismiss stage).

**iii. The Designation of an Official Newspaper Is Not Government Speech**

Despite citing no relevant precedent and acknowledging that government speech theory is a defense, Defendants ask this Court to find, as a matter of first impression, that the selection of an official newspaper is government speech. *See* Mem. at 18-19. The government speech doctrine exists to enable governments to "'promote a program' or 'espouse a policy' in order to

function." *Shurtleff v. City of Bos.*, 596 U.S. 243, 248 (2022). The Supreme Court has applied the doctrine in only limited circumstances and has warned courts to "exercise great caution before extending [its] government-speech precedents." *Matal v. Tam*, 582 U.S. 218, 235 (2017). This Court should decline the invitation to make new law.

At the outset, no reason exists to invoke the government speech doctrine as Defendants must choose an official newspaper as a matter of state law, *see* SAC ¶ 25 & n.2, not to "'promote a program' or 'espouse a policy.'" *Shurtleff*, 596 U.S. at 248. Government speech turns on "the history of the expression at issue; the public's likely perception as to who (the government or a private person) is speaking; and the extent to which the government has actively shaped or controlled the expression." *Id.* at 252. Here, the history of the expression at issue is that the two major political parties each had an opportunity to choose the official newspaper. *See* SAC ¶¶ 29-30 & n.6. In other words, the majority party in the Legislature was not necessarily the entity that controlled the official newspaper designation, and the County Executive had no say in the process. *See id.* Second, because the two majority parties historically each selected an official newspaper, the public is likely to view the choice of the official newspaper as the speech of each of the two major political parties—not of the government. Finally, the *government* has not necessarily shaped or controlled the choice of an official newspaper, legislators from the two major political parties have. This Court should decline to extend the government speech doctrine to a novel circumstance when there is no basis to do so.

**b. Defendants Are Not Immune From Suit**

As stated above, Newsday plausibly alleges its First Amendment retaliation claim. Nonetheless, Defendants claim that absolute legislative immunity prevents Newsday from suing the Legislature and Blakeman and, alternatively, that qualified immunity shields them. Even if

these arguments had merit, which they do not, they would *not* result in the dismissal of this claim. Defendants do not, and cannot, assert that any immunity shields the County. And even if qualified immunity applied, it would only shield against Newsday's request for damages, not the other relief sought.

**i. The Legislature Cannot Invoke Legislative Immunity**

Defendants claim that the Legislature, a *local* governmental body, is entitled to absolute legislative immunity based solely on dicta from a Supreme Court case addressing the likely application of legislative immunity to a *state* legislative body. *See Supreme Ct. of Va. v. Consumers Union of U.S.*, 446 U.S. 719, 733-34 (1980); Mem. at 9. But the Supreme Court has long distinguished between local and state defendants for the purpose of Section 1983 immunities. *See State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 86 (2d Cir. 2007) (collecting cases). While local defendants sued in their individual capacities may invoke legislative immunity, local defendants that are governmental bodies may not. *See id.*; *Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 413 (E.D.N.Y. 2021). This distinction is "due to the historical unavailability of various immunity defenses to local governments." *Rowland*, 494 F.3d at 86. Put simply, "municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983." *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 166 (1993); *Goldberg v. Town of Rocky Hill*, 973 F.2d 70, 71, 74 (2d Cir. 1992) (rejecting a town's attempt to claim absolute legislative immunity over a town council resolution eliminating police positions from the budget). *Consumers Union* therefore does not apply here, and Defendants have failed to point to any case supporting their claim that legislative immunity shields the Legislature, as opposed to individual legislators. *See Rowland*, 494 F.3d at 89 (burden is on defendants to show that they can invoke legislative immunity). Indeed, apart from

*Consumers Union*, the cases they cite *only apply* to legislators or officials, not legislative bodies. *See* Mem. at 8 (describing cases addressing "[s]tate and regional legislators," "county legislators," "a legislator[]," and an "official[]"). As the Legislature is not entitled to legislative immunity, this argument does not support dismissal.[3]

**ii. Legislative Immunity Does Not Shield Blakeman**

Nor is Blakeman entitled to absolute legislative immunity. Executive branch officials cannot claim the protections of legislative immunity unless "their activities were 'legislative' both in form and in substance." *Rowland*, 494 F.3d at 89. Courts examine each challenged activity separately, as legislative immunity can apply to one activity and not another. *See Consumers Union*, 446 U.S. at 731-36 (concluding that the Virginia Supreme Court and its chief justice were legislatively immune for enacting the state's code of professional responsibility, but not for enforcing the code). Here, Newsday alleges that Blakeman, as part of his retaliatory campaign against the newspaper in 2024, (1) ignored its requests for comment and refused to engage with its staff, (2) removed many of its reporters from the press release distribution list, (3) discouraged others from placing ads in Newsday, (4) orchestrated a charter amendment that would enable him to influence the choice of the official newspaper, and (5) decided to recommend that the Legislature designate the New York Post as the County's official newspaper instead of Newsday. SAC ¶ ¶ 34-58, 61. Defendants only assert that Blakeman's last action entitles him to legislative immunity and thus waive any immunity arguments about his other

---

[3] Defendants' argument that New York County Law § 214 permits them to discriminate against Newsday for its political views is beside the point. *See* Mem. at 11. While County Law § 214 permits the consideration of "those newspapers advocating the principles of the two major political parties," it also provides that "the fact that a newspaper is an independent newspaper not advocating the principles of any political party shall not disqualify it from consideration." N.Y. County Law § 214(2). Further, County Law § 214 demonstrates the state's interest in having both political parties able to choose an official newspaper.

actions. *See Fisher v. Kanas*, 487 F. Supp. 2d 270, 278 (E.D.N.Y. 2007) (party waives argument by waiting until reply brief to address it), *aff'd*, 288 F. App'x 721 (2d Cir. 2008).

Courts distinguish between "[t]he elimination of a position" and "the hiring or firing of a particular employee" for legislative immunity purposes. *Rowland*, 494 F.3d at 91 (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 56 (1998)). The latter is not entitled to legislative immunity. *Almonte v. City of Long Beach*, 478 F.3d 100, 107-08 (2d Cir. 2007) ("absolute legislative immunity does not protect . . . against a claim of an administrative firing"). In the official newspaper context, a change in an official newspaper designation "is analogous to the decision to fire, or not rehire, an employee" and, therefore, is not entitled to legislative immunity. *Decker*, 765 F. Supp. 3d at 155-56 (collecting cases); *see also Grasson v. Bd. of Educ.*, 2010 WL 1444570, at *5 (D. Conn. Apr. 12, 2010) (cancelling a contract is not "a policy decision or substantively legislative").

Here, Blakeman recommended that the Legislature engage the New York Post for the official newspaper position, instead of Newsday, pursuant to his newfound authority. *See* SAC ¶¶ 52-53, 61. In other words, Blakeman did not recommend that the Legislature *abolish the position* of official newspaper, but instead that it make a hiring and firing decision—one that squarely constitutes an administrative firing that "legislative immunity does not protect." *Almonte*, 478 F.3d at 108; *see also Rowland*, 494 F.3d at 92 (legislative immunity is inappropriate at the motion-to-dismiss stage where the complaint alleges that employees were "'terminat[ed]' for illegal reasons," and defendants did not eliminate the positions entirely).

Defendants seem to argue that whenever an executive official *recommends* an action that the legislature later adopts, legislative immunity shields him from suit—regardless of *what* action he recommends. *See* Mem. at 10. This argument contradicts the Supreme Court's

instruction that "whether immunity attaches turns . . . on the nature of the act in question." *Almonte*, 478 F.3d at 106. Moreover, their reliance on two district court opinions is misplaced, as both cases involve the elimination of positions rather than individual hiring or firing decisions. *See Orange v. Cnty. of Suffolk*, 830 F. Supp. 701, 703, 706 (E.D.N.Y.) (legislative immunity shields county executive's act of signing a resolution that "abolished fifteen positions"); *Drayton v. Mayor & Council of Rockville*, 699 F. Supp. 1155, 1156 (D. Md. 1988) (legislative immunity shields city manager's proposal to eliminate a "position and its funding"), *aff'd*, 885 F.2d 864 (4th Cir. 1989). That is simply not the case here.

Additionally, Defendants' attempt to distinguish *Decker Advertising* based on the timing of the de-designation is of no moment. *See* Mem. at 11-12. Defendants' decision to name the New York Post as the official newspaper for 2025 was a decision not to renew Newsday's term, and the government may not fail to renew a contract because of the contractor's protected speech. *See Umbehr*, 518 U.S. at 685; *Perry*, 408 U.S. at 598.

For these reasons, legislative immunity does not shield Blakeman's recommendation that the New York Post be named the official newspaper (or any of his other retaliatory acts).

**iii. Qualified Immunity Does Not Shield Blakeman**

Defendants' alternative argument that Blakeman is protected by qualified immunity also fails. To begin, the Second Circuit discourages defendants from raising the qualified immunity defense at the motion-to-dismiss stage. *See Walker v. Schult*, 717 F.3d 119, 130 (2d Cir. 2013) ("[Q]ualified immunity is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed."); *see also Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018) (defendants face a "formidable hurdle" in raising qualified immunity on motion to dismiss).

Qualified immunity is improper if "the plaintiff 'pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Vullo*, 144 F.4th at 389. "The defendants bear the burden of showing that they are entitled to qualified immunity." *Bacon v. Phelps*, 961 F.3d 533, 542 (2d Cir. 2020). Because Newsday alleges that Blakeman violated a First Amendment right and the right was clearly established when the challenged conduct occurred in 2024, Blakeman cannot invoke qualified immunity here.

**1. Newsday Has Plausibly Alleged a Violation of its Rights**

As detailed above, *see supra* Section I.a.i, Newsday plausibly states a claim for First Amendment retaliation.

**2. The Right at Issue Was Clearly Established**

For at least 80 years, the Supreme Court "has made clear" that the government may not deny a person a governmental benefit, *even if* that person has no right to it, on a basis that violates that person's First Amendment right to freedom of speech. *See Perry*, 408 U.S. at 595 (claim against state college for not renewing contract for professor who publicly criticized the college administration survived summary judgment). More specifically, for roughly 30 years, it has been clearly established that the government cannot terminate an entity with a "pre-existing commercial relationship with the government" (i.e., an independent contractor) in retaliation for exercising its First Amendment rights. *See Umbehr*, 518 U.S. at 685-86 (Section 1983 claim against a county's governing body for not renewing trash hauling contract after respondent repeatedly criticized the governing body survived summary judgment); *O'Hare Truck Serv. v. City of Northlake*, 518 U.S. 712, 714-16, 726 (1996) (Section 1983 claim against a city for removing towing company from its list of approved service providers after towing company refused to donate money to mayor's reelection campaign survived motion to dismiss); *see*

*generally Dobosz v. Walsh*, 892 F.2d 1135, 1141 (2d Cir. 1989) ("[T]he proscription of retaliation for a plaintiff's exercise of First Amendment rights has long been established . . . .").

While the Supreme Court has not ruled on the specific issue at bar—the termination of an official newspaper designation—two circuit court opinions have clearly established that a government may not stop advertising in a newspaper because of a newspaper's editorial views and news coverage. *See Vullo*, 144 F.4th at 390 ("[A] plaintiff may still show that a right is clearly established if 'a robust consensus of cases of persuasive authority' says so."); *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014) ("[W]e may nonetheless treat the law as clearly established if decisions from this or other circuits 'clearly foreshadow a particular ruling on the issue.'"). In 1986, the Fifth Circuit held that "it would violate the Constitution" for a county's board of supervisors to withhold *legal* advertising from a newspaper "in retaliation for that newspaper's exercise of first amendment rights." *N. Miss. Commc'ns v. Jones*, 792 F.2d 1330, 1337 (5th Cir. 1986). And, in 1999, the First Circuit affirmed the denial of a motion to dismiss on qualified immunity grounds where the plaintiff newspaper alleged defendants violated the First Amendment by "withdrawing substantial government advertising from a newspaper to punish" it for its coverage. *El Dia v. Governor Rossello*, 165 F.3d 106, 108-10 (1st Cir. 1999). Accordingly, the right to be free from retaliation for editorial coverage by the withdrawal of advertising has been clearly established for nearly 40 years, and qualified immunity does not shield Blakeman in his individual capacity.[4]

---

[4] No room for "reasonable disagreement" therefore exists about whether it is legal to retaliate economically and otherwise against a newspaper as Blakeman did. *See* Mem. at 13. In any event, qualified immunity only shields officials from requests for damages, *see Giambalvo v. Suffolk Cnty.*, 155 F.4th 163, 176 n.3 (2d Cir. 2025) (citing *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013)), and would not shield Blakeman from Newsday's requests for injunctive or declaratory relief, *see* SAC at Prayer for Relief.

#### iv. The Legislature Cannot Invoke Qualified Immunity

Defendants seem to claim that qualified immunity shields the Legislature but fail to cite a single case indicating that qualified immunity could apply to a local legislative body, as opposed to a defendant like Blakeman sued in his individual capacity or an individual legislator. *See* Mem. at 12-13. Nor can they. *See Vega v. Semple*, 963 F.3d 259, 272 (2d Cir. 2020) ("[T]he doctrine of qualified immunity protects government officials from suits brought against them in their individual capacity for money damages"); *cf. Triolo v. Nassau Cnty.*, 24 F.4th 98, 110 (2d Cir. 2022) ("[Q]ualified immunity is an individual affirmative defense that does not protect municipalities."). As Defendants bear the burden of establishing this defense, *see Bacon*, 961 F.3d at 542, this Court should reject their conclusory invocation of qualified immunity on behalf of the Legislature.

## II. The Legislature Violated State Law in its Rush to Penalize Newsday

Newsday asserts three claims under New York law. The first two are claims against the Legislature for its invalid amendment of the County Charter in June 2024, under (1) HRL § 23(2)(f) and the County Charter and (2) the New York Constitution Article IX, § 1(h)(2), and HRL § 34(5). SAC ¶¶ 88-99. The last claim is against the Legislature for its December 2024 failure to publicize the vote on the official newspaper resolution or to post the text of its proposed resolution on its website in violation of Public Officers Law § 103(e). *Id.* ¶¶ 100-07. This Court should deny Defendants' motion to dismiss these claims.

### a. This Court May Exercise Supplemental Jurisdiction

Even if this Court dismisses Newsday's Section 1983 claim for failure to state a claim, which it should not for the reasons detailed above, it may still exercise supplemental jurisdiction over Newsday's state-law claims. "[T]he district court may, at its discretion, exercise

supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction." *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996); *see also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (dismissal "is not a mandatory rule"). As Defendants do not (and could not) argue that this Court lacks original jurisdiction over Newsday's Section 1983 claim, this Court is free to exercise supplemental jurisdiction.

**b. Newsday Complied with New York's Notice Requirements**

Defendants speciously argue that Newsday somehow failed to comply with New York's notice requirements for bringing a claim, asserting that Newsday's witness was unprepared to discuss the claim as required. But they are wrong.

Under Section 50-h, a county has the right to examine a person making a claim against it for a limited purpose: to understand "the occurrence and extent of the injuries or damages." N.Y. Gen. Mun. Law § 50-h(1). The purpose of this examination, which usually arises in tort claims, is to aid the county "investigate the circumstances surrounding the accident and to explore the merits of the claim, while information is readily available, with a view towards settlement." *Colon v. Martin*, 35 N.Y.3d 75, 79-80 (2020). The Section 50-h examination is not, however, a wide-ranging discovery tool or an opportunity for the county to grill a Section 50-h witness about legal theories. *See Alouette Fashions v. Consol. Edison Co. of N.Y.*, 119 A.D.2d 481, 486-87 (1st Dep't 1986), *aff'd*, 69 N.Y.2d 787 (1987).

Here, Newsday's Section 50-h witness was fully prepared to and did testify about the occurrence and extent of Newsday's damages from Defendants' retaliatory conduct. That Newsday later refined its claims does not constitute a "substantive change[] in the theory of liability" that violates the notice requirement. *See Scott v. City of N.Y.*, 40 A.D.3d 408, 408-10

(1st Dep't 2007) (addressing a notice of claim based on assault, battery, and excessive force, where the plaintiff included additional claims based on different facts in his lawsuit); *see also* Mem. at 7 n.6 (conceding notice provision requires disclosure about "the nature of the claim" and "the items of damage or injuries claimed to have been sustained"). Newsday has complied with the notice requirement.[5]

**c. Newsday Plausibly Alleges its Home Rule Law Claims**

**1. Local Law 4-2024 Required A Referendum Because It Curtailed Elective Officers' Power**

A law curtails an elective officer's power when it hinders that officer from doing something they could have done before. "For example, a local law limiting the power of New York City's Mayor to appoint commissioners, or to prepare a budget, or to create or abolish positions within his executive office would require a referendum," while "a law that merely regulates the operations of city government" would not. *Mayor of City of N.Y. v. Council of City of N.Y.*, 9 N.Y.3d 23, 33 (2007). Here, the County Charter historically gave the members of the Legislature representing the two most popular political parties each the ability to designate an official newspaper—power that Democratic and Republican members wielded separately. *See* SAC ¶¶ 29, 30 n.6. Local Law 4-2024, however, inserted the county executive into the designation process and *eliminated* the Legislature's minority party of its power to designate an official newspaper. SAC ¶¶ 57-58. An elimination of power is necessarily a curtailment of

[5] Moreover, courts do not consider transcripts of Section 50-h hearings on a motion to dismiss when the plaintiff does not incorporate it by reference, attach it to the complaint, or rely on it in drafting the complaint. *Gurrieri v. Cnty. of Nassau*, 2018 WL 6590564, at *5 (E.D.N.Y. Dec. 14, 2018) (collecting cases); *Aguilera v. Cnty. of Nassau*, 425 F. Supp. 2d 320, 323 (E.D.N.Y. 2006). As Newsday took none of those actions here, this Court should not consider Exhibit C to Defendants' motion to dismiss.

power. *See Mayor of City of N.Y.*, 9 N.Y.3d at 33 (curtailment exists when powers given to an elective officer by a county charter are merely impaired). Accordingly, Local Law 4-2024 curtailed the power of elective officers in the minority party of the Legislature to designate an official newspaper.

Even if only the permissive referendum requirement in Section 34 applied, as Defendants argue, the government must still notify the voters of their right to seek a permissive referendum. Otherwise, the requirement is meaningless. The decision in *Morin v. Foster* is instructive. 61 A.D.2d 1130, 1131 (4th Dep't 1978), *aff'd*, 45 N.Y.2d 287 (1978). There, the Fourth Department held that a local law to which the permissive referendum requirement attached "cannot become effective *without affording the county electorate an opportunity for permissive referendum thereon*" and, accordingly, affirmed the lower court's invalidation of the law "[s]ince provision for such referendum was not afforded." *Id.* (emphasis added). On appeal, the Court of Appeals affirmed the Fourth Department, concluding that because the local law "curtails the power of the county legislature to bind its successor *while failing to provide for a permissive referendum*, it is unconstitutional and void." *Morin*, 45 N.Y.2d at 295 (emphasis added).[6]

*Morin* controls. The parties agree that no referendum was held. *See* SAC ¶ 60; Mem. at 23. And by declaring Local Law 4-2024 effective immediately, *see* SAC ¶ 60, the Legislature denied the voters the opportunity to seek a referendum, as was their right. Accordingly, this Court should deny Defendants' motion and declare Local Law 4-2024 unconstitutional and void.

---

[6] At least one state law affirmatively requires that "any local law which is subject to a permissive referendum shall be published in . . . official newspapers at least once a week for two successive weeks, the first publication of which shall be had within ten days after such local law is adopted" to notify voters about their opportunity to seek a permissive referendum before the law becomes effective. *See* N.Y. County Law § 214(2).

### 2. Newsday Has Article III Standing

Defendants claim that Newsday cannot establish Article III standing for its HRL claims because, even if this Court were to conclude that the Legislature's amendment of the Charter was invalid, Newsday would not meet the prior version's circulation requirement and thus could not be named the official newspaper. *See* Mem. at 21. Their redressability argument fails for two reasons. First, it ignores that Newsday was, in fact, the official newspaper despite the circulation requirement. *See* SAC ¶¶ 28, 30 & n.6, 31. Second, "the ability 'to effectuate a partial remedy' satisfies the redressability requirement." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992)). Here, a court order invalidating the Legislature's June 2024 amendment to Section 2211 would clearly be a partial remedy that satisfies Article III's redressability requirement. *See id.*

More broadly, the "well-known" fundamentals of standing are satisfied where the plaintiff has (1) suffered an injury in fact (2) that likely was caused by the defendant and (3) would likely be redressed by the requested judicial relief. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). Standing exists because: (1) Newsday suffered an injury in fact when stripped of its official newspaper status and the related legal notice revenue, (2) this injury was caused by the Legislature as part of Defendants' "holy war" to punish Newsday when it invalidly amended the County Charter, and (3) the injury would likely be redressed by the requested judicial relief. *See* SAC ¶¶ 34-60, 76, prayer for relief.

Defendants next argue that Newsday does not fall within the "zone of interests" of the HRL for Counts 2 and 3. This, of course, is *not* an element of Article III standing, and the Supreme Court case they cite addresses "prudential standing" under the Administrative Procedure Act, which has no bearing here. *Nat'l Credit Union Admin. v. First Nat'l Bank & Tr.*, 522 U.S. 479, 488 (1998).

They also point to a single distinguishable Second Department case, *Gizzo v. Town of Mamaroneck*, 36 A.D.3d 162 (2d Dep't 2006), which is not binding on this Court. *See Phila. Indem. Ins. v. Indian Harbor Ins.*, 434 F. Supp. 3d 4, 10 (E.D.N.Y. 2020) ("Decisions of a state's intermediate and lower courts are not binding on the federal courts."). In *Gizzo*, which involved a plaintiff who was a police officer, not a newspaper, the Appellate Division concluded that that "the purpose of the referendum requirement" in HRL Section 23 "is to ensure that electors have a voice when substantial changes are proposed to the powers of the officials whom they elect." 36 A.D.3d at 167-68. Since the plaintiff was not a resident, and thus not an elector, he could not sue under the HRL because he was not within its zone of interests. *Id.* Here, however, the Defendants neither held a mandatory referendum nor informed the public of their right to seek a permissive referendum before stripping the minority-party legislators of their ability to designate an official newspaper. Newsday's ability to sue for violations of HRL Sections 23 and 34 would further the purpose of the referendum requirement—alerting electors of their ability to seek referenda in the face of substantial changes in the law. *See* SAC ¶¶ 19-24. Moreover, courts routinely grant members of the press, like Newsday, the ability to assert the public's interests in other situations. *See, e.g.*, *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008) (press can intervene to "assert the public's First Amendment right of access to criminal proceedings"); *United States v. Adams*, 2025 WL 1226635, at *2 n.1 (S.D.N.Y. Apr. 25, 2025) (same). Finally, Defendants fail to explain how *Gizzo*'s zone of interests analysis would require *dismissal* of Counts Two and Three, which Newsday also brought under the County Charter and the New York Constitution, respectively, as *Gizzo* does not address those authorities.

**d. Newsday Plausibly Alleges an Open Meetings Law Claim**

Defendants contend that the Legislature was not required to publicize the resolution unless asked to do so ahead of time. But they do not explain how, without any advance notice that a proposed resolution is set for discussion at a meeting, a person would know to make any "request therefor." N.Y. Pub. Off. Law § 103(e)*; see Ballard v. N.Y. Safety Track*, 126 A.D.3d 1073, 1077 (3d Dep't 2015) (rejecting municipality's argument that it was not required "to make available to petitioners the proposed 2013 agreement before it was put to a vote," and affirming that the failure to do so "denied petitioners 'any meaningful participation'" and violated Section 103(e)). Following their argument to its logical conclusion, Defendants' construction of the law would permit a government to simply sidestep the Open Meetings Law's requirements by not telling its constituents what is scheduled for discussion at a meeting. This is at odds with the purpose of the statute. *See* N.Y. Pub. Off. Law § 100 (it is "essential to the maintenance of a democratic society that the public business be performed in an open and public manner"); *Csorny v. Shoreham-Wading River Cent. Sch. Dist.*, 305 A.D.2d 83, 87 (2d Dep't 2003) (courts should afford the Open Meetings Law "a liberal interpretation" to effectuate "legislative intent").

Newsday alleges that the Legislature omitted the proposed resolution from its agenda and did not post the proposed resolution ahead of its December 2024 meeting to avoid public scrutiny of the proposed resolution. *See* SAC ¶¶ 63, 104. This states a claim for a violation of Section 103(e). *See Ballard*, 126 A.D.3d at 1077.

**CONCLUSION**

For the foregoing reasons, this Court should deny Defendants' motion to dismiss the Second Amended Complaint.

Dated: March 2, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

By: */s/ Lynn B. Oberlander*

Lynn B. Oberlander
Saumya K. Vaishampayan
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 223-0200
Facsimile: (212) 223-1942
oberlanderl@ballardspahr.com
vaishampayans@ballardspahr.com

*Attorneys for Newsday LLC*

## WORD COUNT CERTIFICATE

I, Lynn B. Oberlander, hereby certify that this Memorandum contains 7,979 words and is in compliance with Rule III.C.1 of this Court's Individual Practices and Local Civil Rule 7.1. In preparing this certification, I relied on the word count of the word-processing system used to prepare this document.

Dated: March 2, 2026

*<u>/s/ Lynn B. Oberlander</u>*
Lynn B. Oberlander

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of March 2026, I served a true and correct copy of the foregoing **PLAINTIFF NEWSDAY LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** to all counsel of record by email, as agreed upon by the parties.

*<u>/s/ Lynn B. Oberlander</u>*
Lynn B. Oberlander