**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

NEWSDAY LLC,                 )
                                   )
          *Plaintiff,*       )
                                   )
       v.               )       Case No. 2:25-cv-01297 DG ARL
                                   )
NASSAU COUNTY; NASSAU     )
COUNTY LEGISLATURE; and BRUCE )
BLAKEMAN, in his individual capacity, )
                                   )
         *Defendants.*     )
                                   )
                                   )

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Date of Service: March 16, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 1

I.    Plaintiff's § 1983 Claim Fails. .......................................................................................... 1

   A.    Both Absolute and Qualified Immunity Bar This Claim. ............................................... 2

   B.    Under Either First Amendment Retaliation Standard, Plaintiff Fails To Allege an Actionable Deprivation of Right. ....................................................................................... 5

   C.    Plaintiff Does Not Allege a Policy or Custom of Violating its Rights. ........................... 8

II.   Plaintiff's Referendum Claims Fail. ................................................................................. 8

   A.    Plaintiff Lacks Standing to Bring These Claims. .......................................................... 8

   B.    The Legislature Properly Amended the County Charter. ............................................... 10

III.  Plaintiff's Open Meetings Law Claim Fails. .................................................................... 10

CONCLUSION..................................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Cases**

*B.T. Skating Corp. v. Cnty. of Nassau*,
612 N.Y.S. 2d 199 (App. Div. 2d Dep't 1994)........................................................................ 8

*Bd. of Cnty. Comm'rs v. Umbehr*,
518 U.S. 668 (1996)............................................................................................................... 5

*Decker Advert. Inc. v. Delaware Cnty.*,
New York, 765 F. Supp. 3d 128 (N.D.N.Y. 2025) .................................................................. 6

*Dist. of Columbia v. Wesby*,
583 U.S. 48 (2018)................................................................................................................. 4

*Garcia v. Does*,
779 F.3d 84 (2d Cir. 2015) .................................................................................................... 3

*Gen. Media Commc'ns, Inc. v. Cohen*,
131 F.3d 273 (2d Cir. 1997) .................................................................................................. 7

*Gizzo v. Town of Mamaronek*,
36 A.D.3d 162 (2d Dep't 2006)............................................................................................. 9

*Granada Buildings, Inc. v. City of Kingston*,
444 N.E.2d 1325 (N.Y. 1982)................................................................................................ 9

*Hous. Works, Inc. v. Guiliani*,
56 F. App'x 530 (2d Cir. 2003) ............................................................................................. 5

*Kirschner v. KPMG LLP*,
938 N.E.2d 941 (N.Y. 2010).................................................................................................. 7

*Liberian Comm'ty Ass'n v. Lamont*,
970 F.3d 174 (2d Cir. 2020) .................................................................................................. 4

*Maxim Grp. LLC v. Life Partners Holdings, Inc.*,
690 F. Supp. 2d 293 (S.D.N.Y. 2010) ................................................................................... 5

*McKinney v. City of Middletown*,
49 F.4th 730 (2d Cir. 2022) ................................................................................................... 4

*Monell v. Dep't of Social Servs.*,
436 U.S. 658 (1978)............................................................................................................... 2

*Morin v. Foster*,
61 A.D.2d 1130 (4th Dep't 1978)......................................................................................... 10

*Nat'l Rifle Ass'n v. Vullo*,
144 F.4th 376 (2d Cir. 2025) ................................................................................................. 4

*Pearson v. Callahan*,
555 U.S. 223 (2009)............................................................................................................... 3

*State Emps. Bargaining Agent Coal. v. Rowland*,
   494 F.3d 71, 89 (2d Cir. 2007) ...................................................................................... 3

*Supreme Ct. of Virginia v. Consumers Union of U. S., Inc.*,
   446 U.S. 719 (1980)....................................................................................................... 3

*Walentas v. N.Y.C. Dep't of Ports*,
   561 N.Y.S.2d 718 (App. Div. 1st Dep't 1990) ......................................................... 8, 9

**Statutes**

42 U.S.C. § 1983............................................................................................................ 1, 2

N.Y. Cnty. Law § 214..................................................................................................... 2, 3

N.Y. Pub. Off. Law § 103(e) ............................................................................................ 10

Nassau Cnty. Charter § 2211 ...................................................................................... passim

**INTRODUCTION**

Whether *Newsday* is "Long Island's paper," Opp. 1, is irrelevant. It is not *Nassau County's official* newspaper, because the Nassau County Legislature—operating under a validly enacted law that replaced one under which *Newsday* could not legally qualify for official-paper status—picked a different official newspaper. Despite Plaintiff's disappointment at that outcome, nothing alleged in Plaintiff's complaint renders that choice a violation of any of Plaintiff's rights, and in any event Plaintiff cannot sue Mr. Blakeman or the Legislature because they are immune.

Nor is there merit in Plaintiff's challenges to the change in law or the Legislature's choice under it. To the extent the court even reaches those challenges (and it should not), it should reject them because (1) Plaintiff lacks Article III standing and is not within the relevant referendum provisions' zone of interests, and (2) Plaintiff has, in any event, misread the relevant statutes.

Plaintiff's operative SAC should be dismissed.

**ARGUMENT**

**I.    Plaintiff's § 1983 Claim Fails.[1]**

Plaintiff's § 1983 claim rests on two fundamentally flawed bases: *first*, that *Newsday* had some protectable expectation of perpetual annual selection as Nassau County's official newspaper, and, *second*, that the Legislature would somehow violate Plaintiff's First Amendment rights if it employed political considerations in choosing some other official newspaper over *Newsday*.

As for the first point, despite Plaintiff's repeated mischaracterization of the Legislature's annual designation decision as a "de-designation," Opp. 9, 16, no de-designation happened. *Newsday* served as Nassau County's official newspaper for the entirety of its designated year-long

---

[1] To the extent Plaintiff seeks as a remedy for any of its claims reinstatement as the official newspaper for 2025, those claims are now moot, because the Legislature has now designated the *Post* as the County's 2026 official newspaper.

term—indeed, for the entirety of multiple annually designated terms.  Then the Legislature did just what the law required:  it chose an official Nassau County newspaper for 2025 using the statutory process, by the statutory deadline, as the statute requires it to do every year.  *Newsday*'s previous selection by previous votes of previous legislatures, no matter how many times it was selected, gave it no rights beyond the end of 2024—nor any right *during* 2024 to be selected again.

And as for the second point, New York law has for more than a century not just allowed but required counties to consider a newspaper's politics in selecting official newspapers: "consideration *shall be given* to the newspapers advocating the principles of [the legislators'] political party [and] the support of [that party's] nominees."  N.Y. Cnty. Law § 214 (emphasis added); *see* R.39 ¶ 25 n.2 (citing § 214).  That makes sense: the purpose of an official newspaper is to act as the *County's mouthpiece* for a specific set of notices that the County is required to publish.  Similarly, the superseded County Charter provision under which Plaintiff was previously designated allows votes for the official newspaper by members of two—but, importantly, *no more than two*—political parties, demonstrating again that political considerations are not just allowed but required in the designation decision.  R.39-1 at 6 § 2211(b).  At a minimum, having long benefited from those longstanding statutory requirements, Plaintiff cannot show any clearly established right to designation decisions free from consideration of political speech.

A.  **Both Absolute and Qualified Immunity Bar This Claim.**

***Legislative immunity bars this suit against Mr. Blakeman and the Legislature.***  In arguing against immunity, Plaintiff cites cases that provide that *municipal corporations* are not immune from § 1983 suits.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  But that is a straw man.  Defendants contend not that *the County* is immune (*see infra* Section I.C), but that the other defendants Plaintiff sued—the *Legislature* and *County Executive Blakeman* are immune from suit

2

due to theories of legislative (absolute) and qualified immunity. As Defendants have argued, the Supreme Court explained in *Supreme Ct. of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 733–34 (1980), that legislative immunity applies to legislative bodies. Again, as Defendants explained, that accords with this Court's inability to order a democratically elected legislature to take some affirmative legislative action, Mot. at 9—a point for which Plaintiff offers no response.

Similarly, Mr. Blakeman is entitled to legislative immunity because the only actions Plaintiff complains of that might plausibly constitute a deprivation of rights are "within the sphere of legitimate legislative activity." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 89 (2d Cir. 2007) (cleaned up). Blakeman's recommendation to designate the *Post* entitles him to legislative immunity. And none of the other actions alleged constitutes a deprivation of rights. *See infra* pgs. 6-8 (no actionable deprivation alleged).

***Qualified immunity separately bars this suit against Mr. Blakeman and the Legislature.*** Plaintiff asks the Court (at 16) to conclude that "the qualified immunity defense" should not be decided at the motion-to-dismiss stage. That is wrong and would vitiate qualified immunity. Contrary to Plaintiff's contention, qualified immunity is not a defense to liability; it is *immunity from suit*, and as such its effect would be significantly vitiated if not resolved at the earliest possible stage in litigation. *Garcia v. Does*, 779 F.3d 84, 97 (2d Cir. 2015).

The Legislature and Mr. Blakeman are entitled to qualified immunity because Plaintiff has not demonstrated, and cannot demonstrate, that it has a clearly established right to be Nassau County's official newspaper or to enjoy a designation decision that is free from political considerations. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). As explained above, New York law has clearly established the opposite for more than a century, *see* N.Y. Cnty. Law § 214, and the charter provision under which *Newsday* was previously designated and that it asks this

3

Court to reinstate similarly permitted political considerations, Nassau Cnty. Charter § 2211 (2024).

In arguing against qualified immunity, Plaintiff points to decisions of the First and Fourth Circuits holding that retaliatory withdrawal of advertising may constitute a violation. But Plaintiff concedes that the County in fact still continues to advertise in *Newsday*, R.39 ¶¶ 51, 76—just not as much as Plaintiff would like. Even if Plaintiff had a clearly established First Amendment right not to be cut off from all advertising (and it does not), it has identified *no* clearly established right to enjoy some particular, preferred amount of advertising funding. *See Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) ("*It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule* the plaintiff seeks to apply.") (emphasis added); *Liberian Comm'ty Ass'n v. Lamont*, 970 F.3d 174, 186 (2d Cir. 2020). Indeed, a rule that any reduction in advertising is a violation of some ill-defined right is unworkable, opening all municipalities to endless litigation.

And in any case, for law to be clearly established for qualified immunity purposes, only "controlling authority or a robust consensus of cases of persuasive authority" that "place[] the statutory or constitutional question beyond debate" will do. *McKinney v. City of Middletown*, 49 F.4th 730, 738–39 (2d Cir. 2022) (cleaned up). The out-of-circuit cases Plaintiff cites do not control, are widely separated in both time and geography, and are far from demonstrating a "robust consensus of cases" that would allow an official to "know[] for certain that the conduct was unlawful under then-existing precedent." *Nat'l Rifle Ass'n v. Vullo*, 144 F.4th 376, 390 (2d Cir. 2025) (cleaned up). A "handful of cases" is too "small [a] set" to "amount to a robust consensus." *McKinney*, 49 F.4th at 739 (quotation marks omitted). Because the absence of any violation of a clearly established right appears on the face of the SAC, this Court may and should rule that qualified immunity bars Plaintiff's claim as to Mr. Blakeman and the Legislature.

4

**B.**    **Under Either First Amendment Retaliation Standard, Plaintiff Fails To Allege an Actionable Deprivation of Right.**

***Plaintiff nowhere alleges it is a "contractor" or in a "continuing commercial relationship."***  In its Opposition, Plaintiff asserts again and again that it is an "independent contractor," entitled to protections as such.  Opp. 6.  But nowhere in its operative SAC does Plaintiff allege that it ever met the most fundamental requirement for "contractor" status—namely, that it ever entered into a contract with the County to be an official newspaper.  At best, Plaintiff's new contention is an impermissible attempt to amend its pleading (for a third time) through its motion papers.  *Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 308 (S.D.N.Y. 2010) ("a party cannot amend its pleading through its opposition brief").

Because it has not alleged any contract with the County, Plaintiff has *also* not plausibly alleged any "pre-existing commercial relationship" with the County as would be required to fall within *Umbehr*'s ambit.  *See Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 685 (1996).  *Umbehr* is, by its own terms, limited to "recogniz[ing] the right of independent government *contractors* not to be terminated for exercising their First Amendment Rights."  *Id.* at 686 (emphasis added).  As the Second Circuit explains, the "commercial relationship[s]" the Supreme Court contemplated in *Umbehr* are thus relationships with an independent contractor that may lack a "continuing contract" but that has, by *virtue of its previous contracts*, an expectation of future employment. *See Hous. Works, Inc. v. Guiliani*, 56 F. App'x 530, 533 (2d Cir. 2003).  And, indeed, each of the cases Plaintiff cites for its position concerns the nonrenewal or unavailability of *a contract*.  *See* Opp. 7.  No contract is alleged here—not even for non-legal-notice advertising.

Here, Plaintiff's relationship with the County—when it had one—was a creature of statutory duty and *designation* by the legislature.  R.39-2.  That is distinct from the mine-run situation in which a government *executive* branch selects and signs a contract with a service

5

provider for a particular service.

Because Plaintiff nowhere alleges the existence of *any* contract, express or implied, with the County, its contentions that it is a "contractor" and that it is in a "continuing commercial relationship" with the count fail, and the applicable First Amendment retaliation test is that for private citizens.

***Under the applicable private-citizen standard, Plaintiff has not alleged First Amendment retaliation.*** Plaintiff has waived any argument that its speech was chilled as would be necessary to satisfy the private-citizen test for a First Amendment violation. Opp. 9 (contending that it is "not necessary" to show a chill). Accordingly, when assessed under the correct private-citizen standard, Plaintiff's First Amendment claim fails.

***Even under the contractor standard, Plaintiff's claim fails.*** Even if Plaintiff had alleged that it was a contractor (again, it hasn't), its claim would fail. The Legislature's annual, statutorily required selection of an official newspaper is not an "employment action" such that selecting a different newspaper could be an "adverse employment action." *See* Opp. 7. "Courts generally treat the termination of a contractor's agreement with the Government as sufficient to constitute an adverse employment action." *Decker Advert. Inc. v. Delaware Cnty.*, New York, 765 F. Supp. 3d 128, 145 (N.D.N.Y. 2025). But here, there was no contract—and thus no termination. Under the relevant statutory provisions, official-newspaper status is a *sui generis* statutory designation.

Plaintiff's response (at 9) that the Legislature's vote occurred "while [*Newsday*] was, in fact, the official newspaper" is no response at all. *Every* vote for an official newspaper *necessarily* occurs during the previous incumbency—under both the prior and the present versions of § 2211, each incumbency lasts for "the ensuing year or until its successor is designated", with a mandatory duty for the legislature *to designate a paper every year*. R.39-1 at 6; R.39-5 at 9. Any other

formulation would leave the County without an official newspaper for the interim period.

Nor did the Legislature's decision end the parties' relationship. As Newsday concedes, Nassau County continues to advertise in *Newsday* and provides *Newsday* with full access to press releases. R.39 ¶¶ 48–49, 51, 76. Plaintiff's contention (at 9) that "a Newsday employee's withholding of information was the reason Newsday failed to receive emails" is "impossible to square with Newsday's plausible allegations." (Cleaned up.) But to the contrary, Plaintiff *affirmatively alleges* that "one Newsday employee" remained on the County's "distribution list for press releases." R.39 ¶ 48. Plaintiff is, of course, charged with that employee's knowledge— including his knowledge of Nassau County's press releases. *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 950 (N.Y. 2010) ("[T]he acts of agents, *and the knowledge they acquire* while acting within the scope of their authority are presumptively imputed to their principals") (emphasis added).

Finally, even if the designation of the *Post* as the official newspaper for 2025 constituted an adverse employment action, Plaintiff has not plausibly alleged a causal connection between its protected speech and that action. Plaintiff points to its allegations about statements of Mr. Blakeman and a single legislator for the notion that "Newsday's speech was the reason for the switch." Opp. 9. But despite Plaintiff's efforts to tie the Legislature's decision to Mr. Blakeman's public statements, Mr. Blakeman had no vote on the official-paper designation—only a power of recommendation. As for Mr. Kopel's statements, the statement of *one* legislator is not dispositive of the motives of the legislature as a whole. *E.g.*, *Gen. Media Commc'ns, Inc. v. Cohen*, 131 F.3d 273, 283 (2d Cir. 1997). And, in any event, Mr. Kopel's stated reasons for the decision to designate the *Post* included *Newsday*'s refusal to report on its diminished circulation, the paywall that prevented users from easily accessing *Newsday*'s content, and the *Post*'s "promise to dedicate two full-time reporters to Nassau County". R.39 ¶ 66; *see also* R.39-6 at 6–7 (103:18–104:22).

7

Plaintiff alleges that those stated reasons were factually "incorrect[]," R.39 ¶ 66—but it does *not* allege that they were not among Mr. Kopel's reasons.

### C.    Plaintiff Does Not Allege a Policy or Custom of Violating its Rights.

As discussed above and in the Motion, Plaintiff has failed to allege any violation of its rights, because it *has no right to a politics-free* designation decision, and its other cavils do not add up to a violation of any right.  Because it has not alleged any violation of its rights, *see supra* Section I.B, *a fortiori* it has not alleged a pattern or practice of such violations.  Its municipal-liability claim against the County under *Monell* must accordingly fail.

## II.    Plaintiff's Referendum Claims Fail.

The Court should not exercise supplemental jurisdiction to reach Plaintiff's state-law claims, Mot. 19–20, but if it does, it should reject them.

### A.    Plaintiff Lacks Standing to Bring These Claims.

*Plaintiff lacks Article III standing, and this court therefore lacks jurisdiction of the referendum claims.*  Plaintiff lacks standing because the remedy it seeks—reinstatement of the previous version of § 2211—would not redress its alleged injuries.  Mot. 21.  Plaintiff offers three responses (at 23), but all are meritless.

First, Plaintiff contends that because "Newsday was, in fact, the official newspaper despite the circulation requirement," that requirement is inapposite, presumably under some theory of estoppel.  (Plaintiff does not say.)  But as "[a] party dealing with a municipality[,] [Plaintiff] is chargeable with knowledge of the statutes [that] regulate [the Legislature's] powers *and is bound by them.*" *B.T. Skating Corp. v. Cnty. of Nassau*, 612 N.Y.S. 2d 199, 200 (App. Div. 2d Dep't 1994) (emphasis added).  "[I]t [was] solely at [Plaintiff's] peril that [Plaintiff] presume[d] that the persons with whom [it was] dealing [were] acting within the scope of their authority." *Walentas v. N.Y.C. Dep't of Ports*, 561 N.Y.S.2d 718, 719 (App. Div. 1st Dep't 1990). "[T]he extent of [the

Legislature's] authority" under § 2211 "is a matter of public record [and so] there is a conclusive presumption that [Plaintiff] is aware of it." *Id.* As a result, "estoppel is unavailable against" the Legislature. *Granada Buildings, Inc. v. City of Kingston*, 444 N.E.2d 1325, 1326 (N.Y. 1982). For similar reasons, Plaintiff's second argument that an order invalidating L.L.4-2024 would be a "partial remedy" is not true *for Plaintiff*, because Plaintiff could not legally be designated under the previous version of § 2211. And Plaintiff's third argument—a conclusory assertion that "the injury would likely be redressed" by something in the "prayer for relief"—is wholly devoid of legal or factual reasoning.

***Plaintiff separately falls outside the zone of interests for the referendum claims.*** As Defendants pointed out, Plaintiff is also not within the zone of interests of the various referendum provisions on which it bases Claims 2 and 3.[2] Mot. 21. Whether under the Home Rule Law or the Constitution, the purpose of referendum provisions is not to protect officious outsiders like Plaintiff but to protect the rights of the electorate. *Gizzo v. Town of Mamaronek*, 36 A.D.3d 162, 167–68 (2d Dep't 2006). Because Plaintiff is neither a Nassau County citizen nor eligible to vote in any election, it is outside the zone of interests. Plaintiff's novel suggestion (at 24) that it should be allowed to bring an action in federal court on behalf of others—namely, citizens *who chose not to seek a referendum*—is self-refuting. Plaintiff is not vindicating "the public's First Amendment right of access to criminal proceedings," or any other public right. Opp. 23. Newsday is pursuing its own financial gain. R.39 at 24 (seeking lost revenue). Had the voters of Nassau County wanted that result, they had an opportunity to (1) seek a referendum on their own, or (2) turn out the

---

[2] Plaintiff's attempt to limit the "zone of interests" test to claims under the Administrative Procedure Act, Opp. 23, is of course meritless. *E.g.*, *Moya v. U.S. Dep't of Homeland Sec'y*, 975 F.3d 120, 135–36 (2d Cir. 2020) (holding that plaintiffs did not fall within zone of interests of the Immigration and Naturalization Act or the Due Process Clause).

9

legislators who passed the laws in the intervening election.  Those voters did neither.

B.    **The Legislature Properly Amended the County Charter.**

***L.L.4-2024 did not represent any curtailment of power.***  As Defendants pointed out, Plaintiff alleges that no newspaper meets the circulation requirements in pre-2024 § 2211.  R.39 ¶¶ 2, 23.  Accordingly, under that provision, *no* legislator—minority party or otherwise—had *any* power to designate an official newspaper.  Plaintiff offers no response to this dispositive point.

***No referendum was required.***  No mandatory referendum was required for this charter law.  Mot. 22–23.  And Nassau County's voters did not seek any referendum under the permissive-referendum authority Plaintiff cites.  Nor does Plaintiff identify any provision in the text of either the Home Rule Law or the Constitution requiring that the government "notify the voters of their right to seek a permissive referendum."  *See* Opp. 22.  Plaintiff simply asserts that there must be such a requirement.  Even the case it relies on—*Morin v. Foster*, 61 A.D.2d 1130 (4th Dep't 1978)—does not impose a notice requirement; it merely required the county electorate "an opportunity for permissive referendum."  The voters had that opportunity and chose not to take it, and, in any case, the Legislature took no action under the new law until months after the permissive-referendum time had passed.

III.    **Plaintiff's Open Meetings Law Claim Fails.**

Plaintiff contends that the legislature needed to notify the public ahead of time of its intent to consider a resolution.  That is a complaint not for Defendants but for the New York Legislature, which did not include a notice requirement in N.Y. Pub. Off. Law § 103(e).  Plaintiff's position would *actually* curtail the legislature's power by preventing it from taking up legislative proposals *sua sponte*.  This Court should reject that position.

**CONCLUSION**

For these reasons and those in the MTD, Plaintiff's complaint should be dismissed.

10

Dated: March 16, 2026

                                       Respectfully submitted,

                                         /s/ *Todd G. Cosenza*
                                         Todd G. Cosenza
                                         WILLKIE FARR & GALLAGHER LLP
                                         787 7th Ave
                                         New York, NY 10019

                                         Jeremy M. Bylund (*pro hac vice*)
                                         Joshua N. Mitchell (*pro hac vice*)
                                         WILLKIE FARR & GALLAGHER LLP
                                         1875 K Street NW
                                         Washington, DC 20006

                                         *Counsel for Defendants Nassau County, Nassau County Legislature, and Bruce Blakeman*

**CERTIFICATE OF COMPLIANCE**

This brief was prepared using Microsoft Word 365.  This paper also complies with this

Court's Individual Practice Rules III.C.1 and III.C.2 because the body of the brief does not exceed

ten double-spaced pages, using 12-point Times New Roman font for all text.

/s/ *Todd G. Cosenza*
Todd G. Cosenza