UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Newsday LLC,

                      Plaintiff(s),

      v.

Nassau County, Nassau County Legislature, and
Bruce Blakeman in his individual capacity,

                  Defendant(s).

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**STIPULATION AND ORDER
REGARDING THE FORMAT OF
ELECTRONICALLY STORED
INFORMATION AND
DOCUMENT PRODUCTION**

Case No.: 2:25-cv-01297 (DG )(ARL)

**LINDSAY,** Magistrate Judge:

This Stipulation and Order shall govern the format and procedure for the production of electronically stored information ("ESI") and related document production in this action.

## I. DEFINITIONS

Plaintiff and Defendants in the above-referenced action (together, the "Parties") agree to search for and produce responsive, non-privileged communications that are in the custody, possession, and control of agreed upon custodians, subject to their respective responses and objections to each other's requests for production, as agreed otherwise by the Parties, and/or so-ordered by the Court.

## II. GENERAL PROVISIONS

To the extent not unduly burdensome, the parties shall produce documents and electronically stored information ("ESI") in this Action in accordance with the agreed-upon specifications set forth below.

1

### III. PRODUCTION OF ESI

A. **Native and Color Productions.** Except as specified in this section, the Parties shall produce all documents and ESI as single-page, black-and-white Group IV Tagged Image File Format ("TIFF") image files, as described in Section III.B below.

1. On a case-by-case basis, the Parties will accommodate reasonable requests made in good faith for the production of specific color images originally produced in greyscale TIFF format to the extent available and where reasonably necessary to decipher the complete meaning, context, or content of the documents. Documents and ESI produced in color shall be produced as JPEG images with Exif compression, 300 dpi or higher, and 24-bit color depth. Each color image file shall be named with the unique production number for the first page of the document or ESI in question followed by the file extension "JPG."

2. For documents and ESI whose native format is MS Excel, MS Access, QuickBooks, other database formats, multi-media files (audio or video), and any other file type that cannot be converted to TIFF, the original native files shall be produced in addition to a single-page TIFF placeholder. MS PowerPoint files (and similar presentation files) shall be produced in both native format and TIFF. The provisions of this Section III.A.2 notwithstanding, the Parties shall not be required to produce in the first instance an original native file of such documents and ESI if a claim of attorney-client privilege, attorney work product protection and/or any other privilege, protection or immunity from disclosure necessitates the

application of redactions to such documents and ESI, apart from redacted MS Excel files, which shall be produced natively. Upon written request, and for good cause shown, the parties shall produce in native format, with any applicable redactions applied natively, documents and ESI documents that necessitate the application of redactions to such documents and ESI.

3. "Native" files refer to electronic files in the same format in which they were originally collected from custodians or other sources. Native file productions shall include extracted text, metadata, and a single page TIFF image indicating that the associated file was produced in native form. Each produced native file shall be named with a unique production number (e.g., [Party Abbreviation]_SMT0000000 I .XLS) that is assigned to that specific record in the production. Native Files should be provided in a self-identified Natives directory. A "NativeLink" entry for each Native File should be included in the .DAT load file indicating the relative file path to each Native File on the production media. Any metadata fields for redacted documents that would reveal privileged information may be excluded, in addition to the following fields: Subject/Unified Subject; FileName/ Unified Subject; FilePath/Virtual Path; MD5 Hash.

4. To the extent any such native files are used in any pretrial motion or proceeding, those files will be referred to by the production number assigned during processing.

B. **TIFF Productions**

1. **Image Production Standard**. Except as provided herein, the parties shall produce all non-database ESI and hard copy documents in TIFF format. All TIFF formatted documents will be single page, black and white, Group 4 TIFFs at 300 x 300 dpi resolution and 8 1/2 X 11 inch page size. If a party requests that a document be imaged at a higher resolution or different page size in order to adequately understand the contents of a specific document(s), the producing party shall make reasonable efforts to reproduce the document(s) in the different format.

   Each page should be branded with a production number and confidentiality designation, if any, on the face of the image. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). All TIFF images shall be produced in a folder named "IMAGES," which shall contain sub-folders named "0001," "0002," etc. Each sub-folder shall contain no more than 20,000 images. Images from a single document shall not span multiple sub-folders.

2. **Load Files.** The parties' document productions shall include Concordance-compatible Load Files, including a Concordance DAT file and an Opticon delimited file, that indicate document breaks of the TIFF images and additional fields as identified in this Section B below. All Load and Cross-reference files shall be produced in a folder named "DATA."

3. **File Name.** Each document image file shall be named with the unique production number of the first page of the document in question followed by the file extension "TIF."

4.     **Document Unitization.** If a document is more than one page, the unitization of the document and any attachments and/or notes shall be maintained as they existed in the original document.

5.     **System Files.** Common system and program files as defined by the NIST library (which is commonly used by e-discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed, or produced.

6.     **Parent-Child Relationships.** Parent-child relationships (the association between an attachment and its parent document) should be preserved and appropriately reflected in the metadata. Production numbering of a parent document and any attachments shall be sequential such that a parent document has the lowest value production number when compared to its attachment(s).

7.     **Metadata Fields and Processing.** Each of the metadata and coding fields that can be extracted from an electronic document shall be produced for that document. The parties are not obligated to populate manually any of the fields that cannot be extracted from a document, with the exception of the metadata fields attached hereto as Exhibit A (which may be populated by the party or the party's vendor).  For the avoidance of doubt, the parties are not obligated to manually populate metadata that cannot be extracted. The parties shall include the metadata fields in a searchable fielded data file, regardless of the production format (unless otherwise specified, time- and date-related metadata will reflect Eastern Standard Time).

8. **Full Families.** Because full families (parents and children — *e.g.*, emails and corresponding attachments) should be produced together, if a document within a responsive family is fully withheld for privilege, the document may be (a) produced with every page containing a full page redaction (Redacted - Privileged) or (b) a Bates-stamped, single-page .TIF placeholder may be produced instead of applying full page redactions, which shall indicate "Document Withheld for Privilege" as the corresponding image for the withheld file.

9. **Redactions.** Responsive documents may be redacted for privileged content or the types of personally identifiable information set forth in Fed. R. Civ. P. 5.2. Documents being redacted for privilege will be marked by a box that covers the protected text and includes the term "Redacted - Privileged." Documents being redacted for PII information will be marked by a black box. The extracted text described above will not be delivered for that document; rather, in place of extracted text, OCR output will be delivered based on the redacted images. Redacted documents may be produced in TIFF format, except for MS Excel files, which shall be redacted natively. Redactions need not be listed on a Privilege Log. Documents withheld for privileges must be listed on a Privilege Log, unless otherwise agreed by the Parties. The Parties disagree on whether Plaintiff shall include on the Privilege Log documents withheld for the Reporter's Privilege. The Parties are continuing to discuss the issue to try to achieve a

resolution without involving the Court. On a document-by-document basis, a Party may request additional information about privilege redactions.

10. **Privilege Log:** The Parties agree to exchange Privilege Logs within 3 weeks after document productions have been substantially completed, or on a date otherwise agreed by the Parties or so-ordered by the Court. The Party withholding any responsive document on the grounds of any privilege claim shall provide to the other Party a Privilege Log which shall contain the following information for each document withheld:

a) Privilege Log Entry Number;

b) the date of the email or document, or if an attachment to an email, the date of the parent email;

c) the identity of person(s) who sent, authored, signed or otherwise prepared the document, and if an email, including their email address (e.g., Jane Doe (jdoe@gmail.com));

d) the identity of all persons designated as recipients, CCs, or BCCs;

e) a description of the contents of the document that, without revealing information that is allegedly privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity; and

f) the type or nature of the privilege asserted.

C. **Searchable Text.** In addition to TIFF images and/or Native files, each production will include text files corresponding to the TIFF image or Native files described above.

1. **Hard Copy Documents.** Hard copy documents shall be scanned using Optical Character Recognition ("OCR") technology and searchable ASCII text (or Unicode text if the text is in a language requiring characters outside of the ASCII character set) files shall be produced. Each file shall be named with the unique production number of the first page of the corresponding TIFF document followed by the extension "TXT."

2. **Extracted Text or OCR Text for TIFF Images and Native Files.** To the extent practicable, each individual document based on an electronic file shall be accompanied by one corresponding text file with text that is extracted from the electronic file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a language requiring characters outside of the ASCII character set) and shall be named with the unique production number of the first page of the corresponding TIFF document followed by the extension "TXT." When there is no extractable text or when an Electronic Document has been redacted, OCR text will be provided. For the avoidance of doubt, redacted text need not be provided. The production of relevant ESI in searchable, full text format is limited to those forms of ESI that have text (in other words, any non-text formats [e.g., .wav and .jpeg] would not produce any corresponding text files).

3. **All Extracted Text and OCR files shall be produced in a folder named "TEXT."** The Concordance load file will contain a link to the extracted

text or OCR text file if applicable. The text should not be included in the Concordance.DAT load file.

D.  **Confidentiality Designations**. If a party reduces Native Files or other ESI designated "Confidential" to hardcopy form, it shall mark the hardcopy with the appropriate designation. The failure of a party to mark such hardcopy documents with the appropriate designation shall not affect such document's designation as "Confidential."

E.  **De-Duplication of Productions**. To the extent that exact duplicate documents (based on MD5 hash values) reside within a party's ESI data set, the party may produce only a single copy of a responsive document. Exact duplicate shall mean documents containing identical content. For exact duplicate documents, the metadata described in Section III.B herein shall be produced for the produced copy. De-duplication shall be done at the document family level, such that where any exact duplicate documents have attachments, hash values must be identical for both the document-plus-attachment (including associated metadata). ESI shall be de-duplicated vertically *(i.e.,* by custodian) and horizontally *(i.e.,* globally across custodians).

F.  **Threading**. The parties may use email threading analytics to produce only "inclusive" emails. Inclusive emails are those containing all unique content within a thread, as determined by commonly accepted threading analytics tools. Emails or documents that cannot be threaded must be reviewed in full. If only inclusives are produced, a Thread ID metadata field must be produced. The producing party may not destroy, modify, or alter lesser included emails that are not produced.

## IV. PROCESSING OF THIRD-PARTY DOCUMENTS

A. A party that issues a non-party subpoena after the date this Stipulation is entered by the Court ("Issuing Party") shall include a copy of this Stipulation with the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein. If a party issued a non-party subpoena prior to the execution of this Stipulation, that party shall promptly forward a copy of this Stipulation to the non-party and request that the non-party produce documents in accordance with the specifications set forth herein.

B. The Issuing Party is responsible for producing to all other parties to the Action any documents obtained pursuant to a subpoena. If a non-party fails to produce documents in accordance with the specifications set forth herein, the Issuing Party shall undertake reasonable efforts to conform the non-party's production to the specifications described herein, and shall assign a unique identification number to each document. Nothing in this Stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or third-parties to object to a subpoena.

## V. MISCELLANEOUS PROVISIONS

A. This Stipulation is intended solely to address the format of document productions. Nothing in this Stipulation is intended to affect the rights of any party to object to any requests or demand for production. Nothing in this Stipulation shall constitute, or operate as, a waiver of any rights of any party to object to, or to avoid, discovery or disclosure, in whole or in part, under the laws of the United States, the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for

10

the Eastern District of New York, this Court's Individual Rules and Practices, or any other applicable law, rule, or order.

B.      Nothing in this Stipulation establishes any agreement as to either the temporal or subject matter scope of discovery in the Action or as to the relevance or admissibility of any document. Nothing in this Stipulation shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege, protection or immunity from disclosure.  For the avoidance of doubt, families shall not be broken to withhold non-responsive documents and redactions should not be applied for non-responsiveness. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of hard-copy documents or ESI.

C.      The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Stipulation. If a producing party, notwithstanding their good faith efforts, cannot comply with any material aspect of this Stipulation or if compliance with such material aspect would be unreasonable, such party shall inform the receiving party in writing as to why compliance with the Stipulation is impossible or unreasonable as soon as reasonably practicable. No Party may seek relief from the Court concerning compliance with the Stipulation unless it has first conferred with the other Party.

D.      Nothing in this Stipulation shall affect, in any way, a producing party's right to seek reimbursement for costs associated with collection, review, and/or production of documents or ESI that the Court has so-ordered. This Stipulation shall not be

construed to indicate that the Court has made any finding regarding whether there is any basis for shifting of costs.

E.    Nothing herein is intended to, nor shall be construed to, diminish or otherwise affect any Party's discovery obligations.

F.    Any application to the Court regarding this Stipulation shall be made pursuant to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of New York, and this Court's Individual Rules and Practices.

G.    The Court will not retain jurisdiction after conclusion of the Action for enforcement of this Stipulation.

| Willkie's Labels | Ballard's Labels | Description |
|---|---|---|
| BegBates | Prod Beg Bates | Beginning Bates number assigned to each document |
| EndBates | Prod End Bates | Ending Bates number assigned to each document |
| BegAttach | Prod Group Begin | Number endorsed on first page of first document in a family (i.e., documents and all attachments thereto) |
| EndAttach | Prod Group End | Number endorsed on last page of last document in a family (i.e., documents and all attachments thereto) |
| All Custodians | All Custodians | All custodians from whom a document was collected |
| SentDate | Email Sent Date/Time | Date the E-mail was sent, expressed in MM/DD/YYYY date format; Time the email was sent expressed in 00:00 a.m/p.m. time format |
| SentTime | Email Sent Date/Time | |
| ReceivedDate | Email Received Date/Time | Date the E-Mail was received, expressed in MM/DD/YYYY date format; Time the E-mail was received, expressed in 00:00 a.m./p.m. time format |
| ReceivedTime | Email Received Date/Time | |
| From | Email From | The "From" line of a produced email |

| To | Email To | The "To" line of a produced email |
|---|---|---|
| CC | Email CC | The "CC" line of a produced email |
| BCC | Email BCC | The "BCC" line of a produced email |
| Subject | Unified Subject | The "Subject" field of a produced email |
| Author | Unified Author | The person(s) who created, wrote, reviewed, signed or approved the document. If no author is present, no value will be coded. Where possible, the Author should be extracted from the metadata of the e-doc. It will NOT be manually coded for paper documents |
| CreateDate | Created Date/Time | Date the E-Mail or document was created, expressed in MM/DD/YYYY date format.; Time the E-mail or document was created, expressed in 00:00 a.m./p.m. time format. |
| CreateTime | Created Date/Time | |
| ModDate | Last Modified Date/Time | Date last modified expressed in MM/DD/YYYY date format; Time last modified expressed in 00:00 a.m./p.m. time format |
| ModTime | Last Modified Date/Time | |
| DocTitle | Unified Subject | Title of a non-email document |

| FileName | Unified Subject | Original File Name, including file extension. |
|---|---|---|
| FilePath | Virtual Path | Folder structure and path to file from the original location identified during processing for All Custodians. |
| FileSize | File Size | A decimal number indicated the size in bytes of a file. |
| File_Extension | File Extension | Displays the extension of a file. |
| Sort Date | Family Date/Time | Families: Date/Time of the Parent document<br><br>Single/Loose Files: Date/Time of the Document<br>● Email = Sent Date/Time<br>● Electronic Loose File = Last Mod Date/Time |
| MD5Hash | MD5 Hash | MD5 or SHA-1 Hash value of a document |
| TextPath | Text Path | The location of the extracted text/ OCR text for a produced document |
| NativePath | Native Path | The location of the produced native version of a document. |

_/s/ Lynn B. Oberlander_              _/s/ Todd G. Cosenza_

Lynn B. Oberlander
Saumya K. Vaishampayan
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY 10019
Telephone:  (212) 223-0200
Facsimile:  (212) 223-1942
oberlanderl@ballardspahr.com
vaishampayans@ballardspahr.com

*Attorneys for Newsday LLC*

Todd G. Cosenza
WILLKIE FARR & GALLAGHER LLP
787 7th Ave
New York, NY 10019

Jeremy M. Bylund (pro hac vice)
Joshua N. Mitchell (pro hac vice)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006

*Counsel for Defendants Nassau County, Nassau County Legislature, and Bruce Blakeman*

Dated: May 21, 2026

**S O   O R D E R E D:**

_____

ARLENE R. LINDSAY
United States Magistrate Judge